RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2001 FED App. 0339P (6th Cir.)
File Name:  01a0339p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

        *v.*                                       No. 99-6693

LENNOX LINVAL ROPER,
    *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 98-00058—James H. Jarvis, District Judge.

Argued:  August 1, 2001

Decided and Filed:  September 21, 2001

Before:  CLAY, GILMAN, and WALLACE, Circuit
Judges.[*]

---

[*]The Honorable J. Clifford Wallace, Circuit Judge of the United
States Court of Appeals for the Ninth Circuit, sitting by designation.

1

―――――――――

**COUNSEL**

**ARGUED:** C. Mark Pickrell, Nashville, Tennessee, for Appellant. David P. Folmar, Jr., ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee. **ON BRIEF:** C. Mark Pickrell, Nashville, Tennessee, for Appellant. David C. Jennings, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee.

―――――――――

**OPINION**

―――――――――

RONALD LEE GILMAN, Circuit Judge. Lennox Linval Roper was indicted for (1) conspiring to distribute cocaine hydrochloride and (2) possessing cocaine hydrochloride with intent to distribute. After a five-day jury trial, he was convicted on both counts. He was then sentenced to 265 months in prison and a 10-year term of supervised release. Roper now appeals, challenging his conviction on various grounds. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

This case involves a drug conspiracy consisting of Roper, Angela Denise Brown, Dave Wellword Malcolm, and Cleo Marie Morris. Their arrest, which occurred on May 2, 1998, was the culmination of an investigation conducted jointly by the Knoxville Police Department and the Federal Bureau of Investigation (FBI). Specifically, the four coconspirators, as well as another individual, Dentworth Davis, were arrested in Roper's residence after James Warren, a government informant, delivered three kilograms of cocaine to Roper and his coconspirators. The police had obtained a search warrant for Roper's residence in anticipation of Warren's delivery.

drug offense involving crack cocaine." *Id.* at *8. Thus on the basis of *Stafford*, *Harper*, and *Pruitt*, we hold that Roper has failed to demonstrate that his sentence is in violation of *Apprendi*.

### III. CONCLUSION

For all the reasons set forth above, we **AFFIRM** the judgment of the district court.

Immediately after the four coconspirators and Davis were arrested, the police found a fourth kilogram of cocaine hidden underneath the bed in the room where Morris was arrested. Warren had earlier observed Morris hiding something under the bed during their interaction immediately before the arrest. Two more kilograms of cocaine were recovered from a car owned by Morris's mother that was parked in the driveway of Roper's residence. Finally, the police discovered a pistol and its ammunition in the closet of the bedroom where the fourth kilogram of cocaine was found, as well as several thousand dollars in cash at various locations within the residence. Davis later admitted during an interview with the FBI that he and Malcolm had arrived with $35,000 in cash that was to be pooled with monies provided by Roper and Morris for the purchase of three kilograms of cocaine.

Angela Brown testified at trial that Roper had been paying her money to store drugs in her apartment since 1995. She had twice observed Roper break up large amounts of cocaine into smaller, one-ounce bags for sale. Her services also included the delivery of cocaine for him on two separate occasions. On May 1, 1998, the night before Roper and his coconspirators were arrested, Angela Brown delivered a half-kilogram of cocaine to Darrel Clemons at the direction of Davis. She also testified that just before she, Davis, and Malcolm drove to Roper's residence to meet with Morris and Roper on the day of their arrest, she had observed Davis and Malcolm discussing the amount of money they needed to purchase drugs.

Numerous other witnesses also connected Roper to the drug conspiracy. One witness was Tammy Maynard, who was a former lover of Brenda Brown, Morris's mother. Maynard testified that Roper paid the rent on Brenda Brown's residence. In return, Brenda Brown allowed Roper to maintain a safe at her house, which was found to contain two kilograms of cocaine and an unspecified amount of cash. Additional cocaine was stored in a diaper bag on the premises. Maynard also testified that Brenda Brown would

occasionally sell some of the cocaine herself and give part of the proceeds to Roper.

Another witness, Steven Mendenhall, testified that he had purchased cocaine from Roper on numerous occasions beginning in 1996. He also revealed that he had received a reduced sentence on his unrelated offense of armed bank robbery in exchange for his testimony. Roper objected to the admission of Mendenhall's testimony on the ground that the government had violated 18 U.S.C. § 201(c)(2), the federal witness anti-gratuity statute. The district court, however, overruled Roper's objection and allowed Mendenhall to testify.

Five additional witnesses — Maurice Clark, Leroy Jones, Jeffrey Simpson, Warren, and Michael Whited — testified that they had purchased cocaine from Roper on various occasions between February of 1995 and May of 1998. In addition, three other witnesses said that they had bought cocaine from Roper in "controlled" buys. All of these witnesses identified the specific dates of their drug transactions, as well as the amounts of cocaine that they had purchased. Clark also testified that his drug buys from Roper were "associated with" Morris.

Warren detailed the events surrounding the May 2, 1998 arrest, as well as his prior dealings with Roper. He said that he and Roper would break down the kilograms of cocaine, separate them into bags of smaller quantities, and then sell the bagged cocaine to Roper's customers. Warren also testified that he had observed Roper storing an additional two-and-a-half kilograms of cocaine in the spare tire of a truck. He described how Roper cut open the tire, retrieved the drugs, and repackaged the cocaine into smaller quantities. Finally, Warren participated in several conversations with Roper and Morris in which they discussed Warren supplying them with cocaine. Prior to engaging in these conversations, Warren had already agreed to work with the FBI. The conversations with Roper and Morris were therefore taped and monitored with Warren's consent.

2001). *Stafford* involved a defendant who argued that his sentence erroneously reflected an enhancement for "crack" cocaine when his indictment specified neither drug quantities nor drug type. *Id.* at *4. This court, however, held that "Defendant's failure to raise any sort of challenge in the proceedings below operates as an admission as to the drug types and quantities set forth in the [PSR], and thereby provides the requisite factual basis to sustain Defendant's enhanced sentence for a drug offense involving crack cocaine." *Id.* at *8 (citing *Pruitt*, 156 F.3d at 648).

In rejecting Stafford's *Apprendi* argument, this court reasoned that the "Defendant's factual admissions in this case obviate any possible concerns about the proper standard of proof." *Id.* at *8. The court pointed out that the Supreme Court, in *Apprendi* itself, distinguished its prior ruling in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), on the ground that the defendant in *Almendarez-Torres* had admitted to the prior felony convictions used to enhance his sentence. There was thus "no question concerning . . . the standard of proof that would apply to a contested issue of fact [that] was before the Court" in *Almendarez-Torres*. *Apprendi*, 530 U.S. at 488. Indeed, even the concurring opinion in *Stafford*, which would have found merit in Stafford's *Apprendi* argument but for the fact that the sentence did not affect his substantial rights, acknowledged the lack of an *Apprendi* problem in a case like *Harper* because "Harper, unlike [Stafford], clearly stipulated to a drug quantity falling under § 841(b)(1)(B), which provided the range within which he was sentenced." *Stafford*, 2001 WL 818245, at *13 n.4.

The holding of *Stafford* applies to the present case. Although Roper initially objected to the drug quantities found in the PSR, he later withdrew his objection at his sentencing hearing, expressly acknowledging that he was accountable for the amount provided in the report in return for the government's agreement not to pursue a firearm enhancement. This express agreement "provides the requisite factual basis to sustain Defendant's enhanced sentence for a

error" standard.  Fed. R. Crim. P. 52(b); *see also United States v. Page*, 232 F.3d 536, 543-45 (6th Cir. 2000) (applying the plain error standard in a drug quantity case). For a challenge to be successful under plain error review, "there must be (1) error, (2) that is plain, and (3) that affect[s] substantial rights.  If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (citations and internal quotation marks omitted; brackets in original).

We find Roper's *Apprendi* challenge to be without merit. Even if he could otherwise show that an *Apprendi* issue affected his substantial rights, this court, in *United States v. Harper*, 246 F.3d 520 (6th Cir. 2001), has established that *Apprendi* is not implicated where the defendant has "stipulated to the amount of drugs for which he was held responsible, and the district court did not rely on any fact outside of the plea agreement to determine drug quantity at sentencing." *Id.* at 530-31(stating that "the principles articulated in *Apprendi* are not implicated by the instant case").

Roper, therefore, waived his *Apprendi* argument during his sentencing hearing when he expressly agreed to the drug quantity provided in the PSR in exchange for the government's agreement not to seek a two-level enhancement for possession of a firearm.  This result is consistent with the decision in *United States v. Pruitt*, 156 F.3d 638 (6th Cir. 1998), in which this court held that "once a defendant has expressly agreed that he should be held accountable for the amount of drugs involved, he cannot now challenge the court's factual finding on this issue." *Id.* at 648 (internal quotation marks omitted).

Nevertheless, a specific question was raised, during oral argument, as to whether *Pruitt* survives *Apprendi*.  This issue was recently resolved by this court in *United States v. Stafford*, No. 99-5706, 2001 WL 818245 (6th Cir. July 17,

Roper was charged with (1) conspiring to distribute cocaine hydrochloride between February of 1995 and May of 1998, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), and (2) possessing cocaine hydrochloride with intent to distribute on May 2, 1998, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).  In determining the amount of cocaine attributable to Roper, the probation officer relied on the testimony of Clark, Jones, Maynard, Simpson, and Warren, but did not include the amount Roper purchased in any of the controlled buys.  The probation officer, on the basis of this testimony, determined that Roper should be held accountable for (1) two kilograms of cocaine with respect to Clark, (2) one-half kilogram with respect to Jones, (3) three kilograms with respect to Simpson, and (4) five-and-a-half kilograms with respect to Warren.  Although the probation officer did not recommend holding Roper responsible for Mendenhall's or Whited's purchases, he did recommend holding Roper accountable for the two kilograms of cocaine stored in Brenda Brown's safe and for the three kilograms of cocaine purchased on the day of Roper's arrest.  Accordingly, the officer determined that total amount of cocaine for which Roper should be held accountable was at least sixteen kilograms.

Roper filed a written objection to the officer's Presentence Investigation Report (PSR), contesting the amount of cocaine for which he should be held accountable, as well as to the officer's recommendations that he be given a two-level enhancement for possession of a firearm and a four-level enhancement for his role in the conspiracy.

At the sentencing hearing, however, Roper withdrew his objection to the drug quantity, acknowledging that he was accountable for the amount provided in the PSR in return for the government's agreement not to pursue a two-level enhancement for possession of a firearm in connection with a conspiracy to distribute drugs.  The relevant excerpt from the colloquy is as follows:

The Court:  [A]s I understand it, Mr. Roper, you, your lawyer, and the government's lawyer have reached certain agreements concerning the presence and use of a firearm and the amount of drugs involved here. And they've agreed that the gun would not be counted at this sentencing hearing, but that a certain amount of drugs would be counted. Do you understand that?

Mr. Roper:  Yeah.

The Court:  Do you agree with that?

Mr. Roper:  Yeah.

After this exchange, the district court stated that the only question left for it to resolve was whether Roper should receive an enhancement for his role in the offense. The court determined that Roper did manage and supervise the conspiracy, and had a prior felony drug conviction. Based on these determinations, the court assessed a three-level increase, resulting in a sentencing guideline range of 263 to 327 months. Roper was then sentenced to 265 months of imprisonment for both counts, to run concurrently. In addition, Roper was sentenced to ten years of supervised release on the count of conspiracy and eight years of supervised release on the count of possession, also to run concurrently. This timely appeal followed.

## II. ANALYSIS

### A. Testimony of Mendenhall

Roper challenges the admission of Mendenhall's testimony, arguing that the government violated the federal witness anti-gratuity statute by offering Mendenhall an inducement for his testimony. The only case Roper cites in support of his argument is *United States v. Singleton*, 144 F.3d 1343 (10th Cir. 1998), which was vacated by the Tenth Circuit en banc within two weeks of the date it was filed. *See United States*

*v. Singleton*, 165 F.3d 1297 (10th Cir.) (en banc), *cert. denied*, 527 U.S. 1024 (1999).

This court has already held that 18 U.S.C. § 201(c)(2), the federal witness anti-gratuity statute, does not prohibit the government from offering leniency in exchange for truthful testimony against the defendant. *See United States v. Ware*, 161 F.3d 414, 418-24 (6th Cir. 1998) (rejecting the reasoning of *Singleton* and holding that 18 U.S.C. § 201(c)(2) does not apply to the federal government). Consequently, the district court correctly determined that Mendenhall's testimony, which was given in exchange for a reduced sentence on an unrelated armed bank robbery offense, was admissible.

Because a prior published opinion of this court is binding unless either an intervening decision of the United States Supreme Court requires modification of the prior opinion or it is overruled by this court sitting en banc, *see United States v. Smith*, 73 F.3d 1414, 1418 (6th Cir. 1996), Roper's argument is foreclosed by *Ware*. We consequently uphold the district court's admission of Mendenhall's testimony.

### B. Roper's sentence

Roper, in a pro se supplemental brief, also argues that his sentence is in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Jones v. United States*, 526 U.S. 227 (1999). He bases his argument on the fact that his indictment did not charge, and the jury was not asked to determine, the quantity of drugs involved in the conspiracy. *See Apprendi*, 530 U.S. at 490 (establishing that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt") (emphasis added).

Roper, however, explicitly withdrew his challenge to the drug quantities in the PSR. Under Rule 52(b) of the Federal Rules of Criminal Procedure, challenges affecting a defendant's substantial rights, but "not brought to the attention of the court," may be reviewed only under the "plain