RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0256P (6th Cir.)
File Name: 02a0256p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

    *v.*

                 No. 99-3867

BRADFORD LEE BUTLER,
      *Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 98-00025—Algenon L. Marbley, District Judge.

Argued: December 6, 2001

Decided and Filed: July 30, 2002

Before: MOORE and COLE, Circuit Judges; O'MEARA,
District Judge.[*]

_____

**COUNSEL**

**ARGUED:** James R. Alsup, Chula Vista, California, for
Appellant. Daniel Allen Brown, ASSISTANT UNITED
STATES ATTORNEY, Columbus, Ohio, for Appellee.

_____

[*] The Honorable John Corbett O'Meara, United States District Judge
for the Eastern District of Michigan, sitting by designation.

1

**ON BRIEF:**    William Yesowitch, BARBER, BANASZYNSKI & ASSOCIATES, Louisville, Kentucky, for Appellant.    Daniel Allen Brown, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee.

MOORE, J., delivered the opinion of the court, in which O'MEARA, D. J., joined.    COLE, J. (p. 22), delivered a separate concurring opinion.

————————————

**OPINION**

————————————

KAREN NELSON MOORE, Circuit Judge.    Defendant-Appellant Bradford Lee Butler pleaded guilty to one count of tax evasion in violation of 26 U.S.C. § 7201.    On appeal, Butler claims that the district court erred by accepting his guilty plea to a count in the indictment that fell outside of the statute of limitations, denying his motion to dismiss the superseding indictment on the basis of the government's alleged breach of an agreement not to prosecute him, and denying his motion to withdraw his guilty plea on the basis of the government's alleged breach of the plea agreement.    In addition, Butler challenges the district court's enhancement of his sentence for the use of sophisticated means, the court's failure to consider a split sentence, and the court's imposition of restitution in an amount to be determined by the Tax Court or the IRS.    For the following reasons, we **AFFIRM** the district court's judgment in all respects, except that we **VACATE** the district court's order regarding the amount of restitution and we **REMAND** for further proceedings consistent with this opinion.

## I. BACKGROUND

The undisputed facts of this case are set forth in an attachment to Butler's plea agreement.    Butler established and operated two businesses, National Consumer Research ("NCR"), of which he was president, and Fulfillment Services Corp. ("FSC").    Butler represented to the Internal Revenue

_____

**CONCURRENCE**

_____

R. GUY COLE, JR., Circuit Judge, concurring. I concur in the majority's opinion. I write separately to note that the record does not reveal why the district court chose to delegate the restitution amount to the IRS or tax court. Certainly, parties to a plea agreement may specify that the final restitution amount will be negotiated between the IRS and the defendant. *See United States v. Gottesman*, 122 F.3d 150, 151-52 (2d Cir. 1997); *United States v. Stout*, 32 F.3d 901, 904 (5th Cir. 1994). However, there is no clear indication that delegation was contemplated as part of the plea agreement in this case. Alternatively, the district court could simply have been unaware that delegation was impermissible. The parties registered no objection to delegation, and only after Butler had been sentenced did this Circuit suggest in binding precedent that delegation of the restitution amount could be plain error. *See Weinberger v. United States*, 268 F.3d 346, 359 (6th Cir. 2001).

If there were evidence that the parties had agreed to delegate restitution, or evidence that the defendant had affirmatively waived his right to have the restitution amount set by the court, I would be more hesitant to vacate the sentence. However, as this record does not present such evidence, I join the majority.

Service ("IRS") that NCR leased its employees from FSC. Butler used payroll services companies to pay the NCR/FSC employees, and the employees' checks showed the deduction of federal taxes. Instead of paying the deducted amounts to the federal government, however, Butler retained the money, and he also failed to file the employer tax return form as required by federal law. On January 29, 1998, a federal grand jury in the Southern District of Ohio returned an indictment against Butler for one count of conspiracy to impede or obstruct the IRS in ascertaining and collecting employment taxes in violation of 18 U.S.C. § 371 and five counts of employment tax evasion in violation of 26 U.S.C. § 7201.[1] On February 26, 1998, the same grand jury returned a superseding indictment, adding information about FSC to some of the counts.

On March 6, 1998, Butler was arraigned, and, initially, he entered pleas of not guilty to the six counts charged against him in the superseding indictment. A number of pre-trial motions were filed, including a motion by Butler to dismiss the superseding indictment on the ground that the government had breached an agreement not to prosecute him. On September 15, 1998, the district court held a hearing on the motion to dismiss. At the hearing, Butler's former attorney and the attorney's paralegal testified that at a meeting in Washington, D.C. on October 18, 1995, the government agreed not to prosecute Butler in exchange for his cooperation in locating and convicting Manning and the payment of his personal income taxes. According to Butler's attorney and the paralegal, this agreement was confirmed in subsequent telephone conversations, although both conceded that there is no documentary evidence of such an agreement. Government witnesses testified that the meeting occurred, but they denied

_____

[1] Butler was indicted with his business partner, Kriston Kent Manning. Manning was charged with one count of conspiracy to impede or obstruct the IRS in ascertaining and collecting employment taxes in violation of 18 U.S.C. § 371 and twelve counts of employment tax evasion in violation of 26 U.S.C. § 7201. Manning has fled the United States and remains a fugitive.

that the government attorney with whom Butler's attorney and the paralegal met ever agreed not to prosecute Butler; in fact, the government attorney testified that she did not have the authority to make such an agreement. The district court found that there was no agreement, specifically noting that "the oral testimony coming from defense witnesses as to an agreement are patently unbelievable," and it denied Butler's motion to dismiss. Joint Appendix ("J.A.") at 415-19 (Mot. to Dismiss Indictment Hearing Tr.).

Following the denial of his motion to dismiss the superseding indictment, Butler signed an agreement with the government to plead guilty to the second count of the superseding indictment charging him with tax evasion in violation of 26 U.S.C. § 7201.[2]  Pursuant to the 1991 Sentencing Guidelines,[3] and based on a tax loss amount of $179,454.97 (the total tax loss to the IRS from both Butler and Manning), the presentence investigation report recommended that Butler be sentenced to twelve months of imprisonment, a fine of $3,000, restitution to be determined by the Tax Court, and a special assessment of $50. The report also recommended a two-level enhancement for the use of sophisticated means and a two-level reduction for acceptance of responsibility. In February 1999, the district court held a hearing on objections to the report. Based on the government's arguments at the hearing and in its post-hearing memorandum, Butler moved on May 5, 1999, to withdraw his guilty plea on the ground that the government had breached the plea agreement.

On May 7, 1999, the district court held a sentencing hearing, at which it also heard Butler's motion to withdraw

---

[2] Pursuant to Federal Rule of Criminal Procedure 11(a)(2), Butler entered the plea on the condition that he could appeal the denial of his motion to dismiss the superseding indictment.

[3] All references to the United States Sentencing Guidelines and the Commentary to the Guidelines in this opinion are to the 1991 version, because the district court relied on that version in sentencing Butler.

pleaded guilty to]." *Weinberger*, 268 F.3d at 357-58 [16]; *see also Comer*, 93 F.3d at 1278-79; *Gall*, 21 F.3d at 110. In this case, Butler's plea agreement does not contain any provision specifically discussing restitution. Therefore, the district court may only order Butler to make restitution to the IRS in an amount that does not exceed the tax loss related to Count 2 of the superseding indictment — $17,652.

### III.  CONCLUSION

For the above reasons, we **AFFIRM** the judgment of the district court, except we **VACATE** the district court's imposition of restitution and we **REMAND** for proceedings consistent with this opinion.

---

[16] 18 U.S.C. § 3663(a)(3) (1994) states that: "The court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement."

The district court in this case delegated the determination of the *amount* of Butler's restitution to the Tax Court or the IRS. Such delegation was impermissible as an abrogation of the court's judicial authority, and we conclude that it affected the fairness, integrity, and public reputation of judicial proceedings. *See United States v. Pandiello*, 184 F.3d 682, 688 (7th Cir. 1999). Therefore, the district court plainly erred in failing to determine the amount of Butler's restitution, and we vacate the restitution portion of Butler's sentence. In addition, we note that on remand, the district court must consider the following matters in determining the amount of restitution Butler should be required to make to the IRS. First, the district court did not explain its order of restitution in this case, but 18 U.S.C. § 3664 delineates a number of factors district courts "shall consider" in ordering restitution.[15] Thus, on remand, the district court must consider the factors and explain why they are or are not relevant. *See United States v. Meacham*, 27 F.3d 214, 219 (6th Cir. 1994) (remanding order of restitution for failure to consider factors set out in 18 U.S.C. § 3664). Second, in *Weinberger*, we held that "absent a specific provision in the plea agreement to pay full restitution pursuant to 18 U.S.C. § 3663(a)(3), the district court could only order restitution for the tax loss related to Count 12 [the count Weinberger

---

delegate restitution-payment schedule to defendant's probation officer); *United States v. Barany*, 884 F.2d 1255, 1261 (9th Cir. 1989), *cert. denied*, 493 U.S. 1034 (1990) (district court may delegate timing and manner of restitution payments to defendant's probation officer, but court's failure to establish amount of restitution required remand).

[15] 18 U.S.C. § 3664(a) (1994) provides that: "The court, in determining whether to order restitution under section 3663 of this title and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate."

his guilty plea. Finding that the government had not breached the plea agreement, the district court denied Butler's motion to withdraw his guilty plea. The court also approved the presentence report's enhancement and reduction recommendations. However, the court agreed — with both Butler and the government — that the appropriate amount of tax loss was $69,558 as opposed to $179,454.97. Based the lower tax loss amount, the court then sentenced Butler to twelve months of imprisonment, three years of supervised release following the imprisonment, a fine of $3,000, restitution to be determined by the Tax Court or the IRS, and a special assessment of $50.[4] Butler timely appeals.[5]

## II. ANALYSIS

### A. Statute of Limitations to Count 2 of the Superseding Indictment

Butler pleaded guilty to tax evasion in violation of 26 U.S.C. § 7201. The statute of limitations period for prosecuting violations of 26 U.S.C. § 7201 is six years. 26 U.S.C. § 6531. Butler claims that the "operative date of violation" of Count 2 was December 31, 1991; therefore, as the superseding indictment was returned on February 26, 1998, he argues that the district court should not have been

---

[4] Pursuant to U.S.S.G. § 2T4.1(F), a tax loss amount of more than $40,000 warrants a base offense level of 11; the recommended two-level enhancement and reduction to Butler's base offense level cancel one another out. As Butler's Criminal History Category was I, he was sentenced within an eight-to-fourteen-month range.

[5] On January 18, 2000, Butler filed a petition for a writ of habeas corpus or in the alternative a motion to set aside the conviction and sentence under 28 U.S.C. § 2255 in the district court, suspending his direct appeal pending the outcome of the petition. Butler alleged ineffective assistance of counsel and failure of the United States to exhaust its administrative remedies. The district court denied both the petition and a certificate of appealability; this court also denied a certificate of appealability.

able to accept his guilty plea to Count 2 because the statute of limitations for prosecuting the offense in Count 2 had run.

We conclude that the district court properly accepted Butler's guilty plea to Count 2 of the superseding indictment because the statute of limitations had not yet run on the offense described in that Count.  Count 2 of the superseding indictment states that:

> On or about the 31st day of January 1992, in the Southern District of Ohio, KRISTON KENT MANNING and BRADFORD LEE BUTLER, JR., defendants, who conducted businesses known as National Consumer Research (hereinafter, "NCR") and Fulfillment Services Corp. that were established in Columbus, Ohio, and with business operations then in Columbus, Ohio, did willfully attempt to evade and defeat federal income taxes withheld from wages and Federal Insurance Contributions Act taxes due and owing to the United States of America for the quarter ending December 31, 1991, by failing to file with the Internal Revenue Service an Employer's Quarterly Federal Tax Return, Form 941, and by failing to pay the amount of federal income tax withheld and social security taxes due and owing . . .

J.A. at 32 (Superseding Indictment).  We have held that the statute of limitations begins to run for tax evasion under 26 U.S.C. § 7201 on the date of "the last affirmative act of evasion." *United States v. Dandy*, 998 F.2d 1344, 1356 (6th Cir. 1993), *cert. denied*, 510 U.S. 1163 (1994).  The date Butler cites as the operative date of violation — December 31, 1991 — is not the date of the last affirmative act of evasion.  December 31, 1991, was the day the winter quarter of 1991 ended; the taxes for that quarter were not even due until January 31, 1992.  Therefore, at the very earliest,

the restitution provision, 18 U.S.C. § 3583(d), via its reference to 18 U.S.C. § 3563(b)(3), requires restitution to conform with provisions of the VWPA, notwithstanding the limitations set forth in § 3663(a)."). [13]  Under the VWPA, a district court may not delegate the determination of the amount of restitution.  At issue is the district court's abrogation of its judicial authority; as the Fourth Circuit has held, "making decisions about the amount of restitution, the amount of installments, and their timing is a judicial function and therefore is non-delegable." *United States v. Johnson*, 48 F.3d 806, 809 (4th Cir. 1995).  Although in *Weinberger v. United States* this court held that a district court does not abrogate its judicial authority under the VWPA "when it delegates the setting of a restitution-payment schedule to the defendant's probation officer," we also held that such delegation was only permissible *"provided that the court first establishes the amount of restitution." Weinberger v. United States*, 268 F.3d 346, 360 (6th Cir. 2001), *cert. denied*, 122 S. Ct. 1433 (2002) (emphasis added) (quotation omitted). [14]

---

[13] 18 U.S.C. § 3563(b)(3) (1994) states that:  "[The court may provide that the defendant] make restitution to a victim of the offense under sections 3663 and 3664 (but not subject to the limitations of section 3663(a)) . . . ."  As noted above, the VWPA is codified at 18 U.S.C. §§ 3663, 3664.  Therefore, although the district court had authority to order restitution under 18 U.S.C. § 3563(b)(3) in a case in which the defendant pleaded guilty to an offense other than those offenses listed in 18 U.S.C. § 3663(a)(1), the rest of the VWPA as codified in 18 U.S.C. §§ 3663, 3664 still applies. *See Gall*, 21 F.3d at 109-110.

[14] No circuit has held that determination of the amount of restitution is delegable.  In accordance with the Fourth Circuit, the substantial majority of circuits has held that neither the amount of restitution nor the restitution-payment schedule may be delegated. *See United States v. Pandiello*, 184 F.3d 682, 688 (7th Cir. 1999); *United States v. Graham*, 72 F.3d 352, 356 (3d Cir. 1995), *cert. denied*, 516 U.S. 1183 (1996); *United States v. Porter*, 41 F.3d 68, 71 (2d Cir. 1994); *United States v. Albro*, 32 F.3d 173, 174 (5th Cir. 1994).  Neither of the two other circuits to have held that a district court may delegate a defendant's restitution-payment schedule to the defendant's probation officer have held that a district court may delegate the amount of restitution. *See United States v. Fuentes*, 107 F.3d 1515, 1529 n.25 (11th Cir. 1997) (district court may

§§ 3663, 3664 (1994).[12] Because Butler did not object to the imposition of restitution at the sentencing hearing, this court must review such imposition for plain error. *United States v. Hall*, 71 F.3d 569, 573 (6th Cir. 1995).

Butler correctly points out that the VWPA does not apply to Title 26 offenses such as tax evasion. 18 U.S.C. § 3663(a)(1). However, the district court did not order Butler to make restitution under the VWPA; the district court ordered Butler to make restitution as a condition of supervised release under 18 U.S.C. §§ 3563(b)(3), 3583(d) (1994). The presentence investigation report recommended that restitution to the IRS be ordered as a condition of probation or supervised release under 18 U.S.C. §§ 3563(b)(3), 3583(d), and the district court adopted this recommendation. 18 U.S.C. §§ 3563(b)(3) states that district courts may provide that a defendant "make restitution to a victim of the offense" as a condition of probation. 18 U.S.C. § 3583(d) extends the possibility of such provision to supervised release. Therefore, we conclude that the district court had authority to order Butler to make restitution to the IRS.

More problematic, however, is the district court's order of restitution in an amount "To be determined thru tax court or IRS." J.A. at 43. Although the district court had authority to order Butler to make restitution pursuant to 18 U.S.C. §§ 3563(b)(3), 3583(d), not pursuant to the VWPA, such restitution was required nonetheless to conform to the provisions of the VWPA. *See Gall v. United States*, 21 F.3d 107, 111 (6th Cir. 1994) ("We have already concluded that

---

[12]This court has held that "restitution imposed under the VWPA is punishment for the purpose of the Ex Post Facto Clause." *United States v. Schulte*, 264 F.3d 656, 662 (6th Cir. 2001) (citing *United States v. Streebing*, 987 F.2d 368, 376 (6th Cir.), *cert. denied*, 508 U.S. 961 (1993)). Therefore, we apply the version of the VWPA in effect at the time Butler committed the offenses for which he is required to make restitution. *See* 18 U.S.C. §§ 3663, 3664 (1994). We also note that the 1996 amendment to the VWPA — the Mandatory Victims Restitution Act ("MVRA"), codified at 18 U.S.C. § 3663A (Supp. V ), — does not apply. *See Schulte*, 264 F.3d at 662.

January 31, 1992, is the date of the last affirmative act of evasion.[6]

Moreover, Butler calculates the date of prosecution as the date the superseding indictment was entered — February 26, 1998. However, this court has held that a superseding indictment relates back to the date of the original indictment if it "does not broaden the charges set forth" in the original indictment. *United States v. Garcia*, 268 F.3d 407, 411 (6th Cir. 2001), *cert. denied*, No. 01-9762, 2002 WL 754021 (U.S. May 20, 2002). In *Garcia*, this court concluded that the addition of drug quantities in a superseding indictment did not "materially broaden the charges already pending against the defendants," because the defendants had sufficient notice of the drug quantities. *Id*. at 416. Similarly, in a fraud conspiracy case, *United States v. Lash*, we held that a superseding indictment was not materially broadening because:

> The dates of the conspiracy remain the same, as do the names of the conspirators and the nature and offices of the operations alleged. The allegation of additional underlying details in a superseding indictment does not compel a conclusion that the charge had been broadened. The original indictment clearly put the defendants on notice of the charges against which they were to defend themselves at trial.

*United States v. Lash*, 937 F.2d 1077, 1081-82 (6th Cir. 1991) (quotation omitted), *cert. denied*, 502 U.S. 949 (1991) and 502 U.S. 1061 (1992). In this case, the only change to Count 2 between the original indictment and the superseding indictment was the substitution of FSC for another company,

---

[6]In *Dandy*, we held that the filing of the defendant's tax returns did not necessarily constitute the last affirmative act of evasion. We explained that because "defendant's evasive acts in 1985 prevented the IRS from learning about defendant's income tax fraud occurring in 1982 and 1983," such acts constituted affirmative acts of evasion for the 1982 and 1983 tax years. *Dandy*, 998 F.2d at 1355.

Data Central. This substitution simply constitutes "underlying detail" — both companies were alleged to have performed the same role in the tax evasion. Thus, Butler clearly had notice of the charges against him in the first indictment. As the superseding indictment relates back to the original indictment, the date of prosecution is January 29, 1998. This date is within — albeit by three days — the six-year statute of limitations period beginning January 31, 1992.

## B. Motion to Dismiss the Superseding Indictment

Butler moved to dismiss the superseding indictment on the ground that the government breached an informal agreement not to prosecute him. The district court denied the motion, finding that no such agreement existed, and Butler properly preserved the issue for appeal. "To secure a defendant's cooperation in a criminal investigation, the government may informally grant him immunity in exchange for his testimony. An agreement not to prosecute is contractual in nature, and subject to contract law standards." *United States v. Fitch*, 964 F.2d 571, 574 (6th Cir. 1992) (citation omitted). As with plea agreements, therefore, we review for clear error the district court's factual determination regarding the content of an agreement not to prosecute, and we review de novo the district court's legal determination whether certain conduct violated the agreement. *United States v. Wells*, 211 F.3d 988, 995 (6th Cir. 2000). Because the district court denied Butler's motion to dismiss the superseding indictment on the basis of its finding that an agreement not to prosecute Butler did not exist — a factual determination, we review the district court's denial of Butler's motion to dismiss the superseding indictment for clear error. *See United States v. Suarez*, 263 F.3d 468, 476 (6th Cir. 2001), *cert. denied*, 122 S. Ct. 1547 (2002) (applying the same standard of review to a district court's denial of a motion to dismiss an indictment for

was eight to fourteen months, and thus he could have received a "split sentence" under § 5C1.1(d). U.S.S.G. § 5C1.1(d) commentary, applic. note 4; *see also United States v. Cseplo*, 42 F.3d 360, 361-62 (6th Cir. 1994). Butler did not raise any objection to the district court's failure to apply the split-sentence guideline at the sentencing hearing; therefore, this court may only review the district court's failure to apply the guideline for plain error. *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998), *cert. denied*, 526 U.S. 1030 (1999); *United States v. Barajas-Nunez*, 91 F.3d 826, 830 (6th Cir. 1996).

"Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Fed. R. Crim. P. 52(b). For a challenge to be successful under plain error review, "there must be (1) error, (2) that is plain, (3) and that affects[s] substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Roper*, 266 F.3d 526, 531 (6th Cir. 2001) (quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)). As U.S.S.G. § 5C1.1(d) gives the district court the discretion to sentence certain defendants either to a term of imprisonment or to a "split" term of imprisonment and community confinement or home detention, the district court's failure to sentence Butler to a "split" term cannot constitute error much less plain error.

### 3. Restitution

The district court sentenced Butler to make restitution to the IRS in an amount "To be determined thru tax court or IRS." J.A. at 43 (Judgment). Butler argues on appeal that the district court erred by failing to specify the amount of restitution, and, furthermore, that the district court did not have the authority to order restitution under the Victim and Witness Protection Act (VWPA), as codified at 18 U.S.C.

or her own personal involvement did not constitute sophisticated means." *Id*.

On appeal, Butler argues that he was simply involved in a complex scheme of tax evasion set up by his business partner, Manning.    However, the evidence presented by the government at the sentencing objections hearing demonstrated that Butler's personal involvement in the scheme constituted sophisticated means.  First, as opposed to the defendant in *Kraig*, Butler himself helped set up the shell companies Data Central and FSC, and he was president of NCR.  Second, although Butler may not have set up the various different bank accounts or post office boxes, he used them in his day-to-day business at NCR — he was not just occasionally involved in the scheme.  Third, according to Richardson, Butler did use an alias.  And, finally, Richardson and IRS agents provided evidence that Butler tried to mislead the IRS. In other words, "[t]his was not a case of an individual who simply lied on a 1040 form." *Pierce*, 17 F.3d at 151.  We therefore conclude that the district court properly applied the two-level sophisticated means enhancement to Butler's base offense level.

### 2.  Split Sentence

Butler argues that the district court overlooked the possibility that Butler's sentence could be "split" under U.S.S.G. § 5C1.1(d).  U.S.S.G. § 5C1.1(d) provides that:

> If the minimum term of imprisonment in the applicable guideline range in the Sentencing Table is more than six months but not more than ten months, the minimum term may be satisfied by (1) a sentence of imprisonment; or (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in § 5C1.1(e), provided that at least one-half of the minimum term is satisfied by imprisonment.

Because his base offense level was set at 11 and his Criminal History Category was I, Butler's sentencing guideline range

prosecutorial vindictiveness as applies in prosecutorial misconduct cases).[7]

The district court found that there was no agreement between the government and Butler not to prosecute Butler; therefore, the district court concluded that the government could not have violated any such agreement.  Butler was unable to produce any documentary evidence of the alleged agreement, and the district court found the only witnesses who attested to the existence of the agreement not to be credible.  Unless it has no foundation, we defer to a district court's finding of credibility. *United States v. Owusu*, 199 F.3d 329, 339 (6th Cir. 2000).  We thus conclude that it was not clear error for the district court to find that there was no agreement by the government not to prosecute Butler, and we agree with the district court that if no agreement existed, the government could not have breached it.  Butler's motion to dismiss the superseding indictment was properly denied.

---

[7] We have stated that we generally review a district court's refusal to dismiss an indictment for abuse of discretion. *See, e.g., United States v. Middleton*, 246 F.3d 825, 841 (6th Cir. 2001) (citing *United States v. Powell*, 823 F.2d 996, 1001 (6th Cir.), *cert. denied*, 484 U.S. 969 (1987)). However, where a district court's refusal to dismiss an indictment is determined by its conclusion regarding another claim as in *Suarez*, we have applied the same standard of review to the district court's refusal to dismiss the indictment as we apply to the claim alleged as the basis for dismissal. *See, e.g., United States v. Wright*, 260 F.3d 568, 570 (6th Cir. 2001) (applying de novo review to a district court's denial of a motion to dismiss an indictment for destruction of potentially exculpatory evidence) (citing *United States v. Jobson*, 102 F.3d 214, 217 (6th Cir. 1996)); *see also United States v. Plummer*, 941 F.2d 799, 802-03 (9th Cir. 1991) (discussing the relationship between the standard of review applied to motions to dismiss indictments and that applied to the claim on which the motion to dismiss the indictment is based).  Because in this case the district court's denial of Butler's motion to dismiss the indictment was determined by its finding that an agreement not to prosecute Butler did not exist, we apply the same standard of review to the court's denial of the motion as we apply to the court's factual determination regarding an agreement not to prosecute.

## C. Motion to Withdraw Guilty Plea

Butler claims on appeal that the district court erred in denying his motion to withdraw his guilty plea, because the government breached the plea agreement in a number of ways. According to Butler, the government: (1) used incriminating information provided by Butler to argue for two two-level enhancements of Butler's base offense level in violation of Paragraph 4 of the plea agreement; (2) contested a two-level reduction of Butler's base offense level for acceptance of responsibility in violation of Paragraph 9 of the plea agreement; and (3) failed to move for a downward departure from the guidelines range in Butler's sentence, even though Butler substantially assisted in the government's investigation and prosecution of Manning in violation of Paragraph 14 of the plea agreement.[8]

---

[8] Butler also contends that it was his understanding that the plea agreement was for a tax loss amount of $17,652 — not $69,558. However, Paragraph 8 of the plea agreement explicitly states that: "The parties further agree that the amount of loss suffered by the victim, the United States of America, for criminal tax purposes is calculated to be $69,558.00. . . ." J.A. at 130 (Plea Agreement). We have held that "[a]n integration clause normally prevents a criminal defendant, who has entered into a plea agreement, from asserting that the government made oral promises to him not contained in the plea agreement itself." *United States v. Hunt*, 205 F.3d 931, 935 (6th Cir. 2000). The plea agreement in this case contained such an integration clause. J.A. at 133 (¶ 16).

Moreover, although Count 2 in the original indictment did state $17,652 as the amount of tax loss for that count, Butler could have been held accountable for sentencing purposes for the amount of tax loss incurred as "part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2); U.S.S.G. § 2T1.1 commentary, applic. note 3 ("In determining the total tax loss attributable to the offense (*see* § 1B1.3(a)(2)), all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated."). The combined tax loss of all the counts charged against Butler in the superseding indictment totals $69,558, and thus even if Butler had not agreed to this amount in the plea agreement, it would have been an appropriate amount of tax loss from which to determine Butler's sentencing range if found by a preponderance of the evidence by the district court. *See also United States v. Daniel*, 956 F.2d

---

Cir. 2002). In addition, we review de novo the district court's application of the facts to the Sentencing Guidelines, because such application involves a mixed question of law and fact. *United States v. Middleton*, 246 F.3d 825, 844 (6th Cir. 2001). Therefore, "[t]he determination that a tax evasion scheme used sophisticated means generally enjoys the protection of the clearly erroneous standard, except that we review the application of the guideline to a particular set of facts *de novo*." *United States v. Pierce*, 17 F.3d 146, 151 (6th Cir. 1994). And "[w]e review de novo whether a restitution order is permitted under the law. If it is, we then review the amount ordered under the abuse of discretion standard." *United States v. Comer*, 93 F.3d 1271, 1278 (6th Cir.), *cert. denied*, 519 U.S. 1033 (1996).

### 1. Sophisticated Means Enhancement

The district court applied a two-level enhancement to Butler's base offense level for use of sophisticated means in impeding "discovery of the nature or extent" of a tax evasion offense, pursuant to U.S.S.G. § 2T1.1(b)(2). The Commentary to the Guidelines explains that: "'Sophisticated means,' as used in § 2T1.1(b)(2), includes conduct that is more complex or demonstrates greater intricacy or planning than a routine tax-evasion case. An enhancement would be applied, for example, where the defendant used offshore bank accounts, or transactions through corporate shells." U.S.S.G. § 2T1.1(b)(2) commentary, applic. note 6. In overruling Butler's objection to the enhancement, the district court stated that "[i]t appears to the Court that there was a fairly elaborate scheme employed here and that Mr. Butler took part of [sic] that scheme. He used post office drop boxes, aliases, put out some of the incomplete referrals." J.A. at 711 (Sentencing Hearing Tr.). We have held that the sophisticated means enhancement requires the sentencing court to look at the actions taken by the individual. *United States v. Kraig*, 99 F.3d 1361, 1371 (6th Cir. 1996). In particular, "[a] defendant involved in a complex or repetitive tax conspiracy is not automatically given a sophisticated means enhancement if his

the government.[11]  Thus the government in not moving for a downward departure for substantial assistance was acting within its discretion under the plea agreement.  We therefore also agree with the district court that the government did not breach the plea agreement by contesting the two-level reduction for acceptance of responsibility or failing to move for downward departure for substantial assistance.

Because we agree with the district court that the government did not breach the plea agreement, we further conclude that the district court did not abuse its discretion in denying Butler's motion to withdraw his guilty plea.

**D.  Sentencing**

Butler challenges the district court's determination of his sentence in three respects:  (1) the district court's application of a two-level enhancement for use of sophisticated means to Butler's base offense level; (2) the district court's failure to consider a split sentence; and (3) the district court's imposition of restitution in an amount to be determined by the Tax Court or the IRS.  We review de novo the district court's interpretation of the Sentencing Guidelines, and we review the district court's findings of fact at sentencing for clear error.  *United States v. Canestraro*, 282 F.3d 427, 431 (6th

---

[11]Paragraph 14 of the plea agreement provided that:
The United States Attorney for the Southern District of Ohio agrees that if Defendant BRADFORD LEE BUTLER, JR., provides substantial assistance in the investigation or prosecution of others who have committed criminal offenses, the United States Attorney may move the Court pursuant to U.S.S.G. §3553(e) and/or §5K1.1 of the United States Sentencing Guidelines for an appropriate departure from the otherwise applicable guideline range for Defendant's sentence and will in connection therewith make known to the Court the nature and extent of Defendant's assistance.  Defendant understands that whether such motion should be made lies within the discretion of the United States Attorney and that whether and to what extent such motion should be granted are solely matters for determination by the Court.
J.A. at 132.

---

The district court, after reviewing all the above claims at Butler's sentencing hearing, found that the government had not breached the plea agreement and therefore denied Butler's motion to withdraw his guilty plea.  We review the district court's decision to deny Butler's motion to withdraw his guilty plea for abuse of discretion. *United States v. Pluta*, 144 F.3d 968, 973 (6th Cir.), *cert. denied*, 525 U.S. 916 (1998).  Federal Rule of Criminal Procedure 32(e) provides that "[i]f a motion to withdraw a plea of guilty . . . is made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason."  Had the government breached the plea agreement, we have held that "the proper remedy may be either specific performance or permitting the defendant to withdraw his plea." *Peavy v. United States*, 31 F.3d 1341, 1346 (6th Cir. 1994).  As noted above, we review for clear error the district court's determinations regarding the content of the plea agreement, and we review de novo the district court's determination that the government's conduct did not breach the plea agreement. *Wells*, 211 F.3d at 995.

Butler claims that he met with law enforcement authorities on December 17, 1998, pursuant to Paragraph 4 of the plea agreement, and provided them with information that the government then used in arguing for two two-level enhancements of his base offense level in violation of that paragraph.  Paragraph 4 of the plea agreement stated that:

Pursuant to §1B1.8 of the Federal Sentencing Guidelines, the government agrees that any self-incriminating information so provided will not be used against the defendant in determining the applicable guideline range for sentencing, or as a basis for upward departure from the guideline range.

---

540, 544 (6th Cir. 1992).

J.A. at 128 (Plea Agreement).[9]  At the sentencing hearing, however, the government claimed that "every single piece of evidence that was used relative to sentencing was in the file of the United States Attorney and the IRS prior to [the meeting].  In fact, it was in the file prior to the return of the Superseding Indictment in this case."  J.A. at 704 (Sentencing Hearing Tr.).

First, the government argued that Butler's base offense level should be enhanced by two levels for use of "sophisticated means" pursuant to U.S.S.G. § 2T1.1(b)(2), as recommended in the presentence investigation report.  The government claimed that "Butler kept the money concealed from the IRS behind another business entity name, used post office 'drop' boxes and aliases, and successfully put off agents through incomplete referrals and presentation of tax protestor defenses."  J.A. at 158 (Pl.'s Post-Hearing Mem. re Sentencing Issues).  The fact that Butler concealed money from the IRS was clearly available to the government prior to the post-plea meeting.  In addition, Fred Richardson, Butler's business partner's bookkeeper and the government's informant in this case, testified to all of the other facts at the sentencing objections hearing on February 25, 1999, and he referenced particular pieces of evidence likely to be in his knowledge or possession prior to Butler's post-plea meeting with the government.  Second, the government argued that Butler's base offense level should be enhanced by two levels for willful obstruction pursuant U.S.S.G. § 3C1.1 because Butler "repeatedly lied and cast blame upon others."  J.A. at 158-59.  As in its argument for the sophisticated means

---

[9]U.S.S.G. §1B1.8(a) provides that:
Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.
*See also United States v. Miller*, 910 F.2d 1321, 1325 (6th Cir. 1990), *cert. denied*, 498 U.S. 1094 (1991).

enhancement, the government in making its willful obstruction argument relied on three sources of facts:  the facts to which Butler stipulated in pleading guilty to Count 2, Richardson's testimony, and the experience of IRS agents.  Such facts were likely in the possession of the government prior to Butler's post-plea meeting with law enforcement authorities.  We therefore agree with the district court that the government did not breach the plea agreement by arguing for the sophisticated means and obstruction of justice enhancements.

Butler also claims that the government violated the plea agreement by contesting a two-level reduction of his base offense level for acceptance of responsibility and by failing to move for a downward departure from his guidelines range for substantial assistance.  In regard to the reduction, the plea agreement explicitly conditioned the government's support of the reduction on the defendant's continued acceptance of responsibility.[10]  The district court did eventually apply the reduction, but it was at least reasonable for the government to argue that Butler failed to accept responsibility for his 1991-92 act of tax evasion when he testified that he had no knowledge of the failure of NCR to pay its employment taxes until 1992 and that he cooperated with the IRS as soon as he learned of the problem.  In regard to the downward departure, the plea agreement stipulated that the government "may" move the court for a downward departure for substantial assistance, but that such motion lay within the discretion of

---

[10]Paragraph 9 of the plea agreement provided that:
The parties further agree that pursuant to U.S.S.G. §3E1.1, at the time of his plea, the Defendant BRADFORD LEE BUTLER, JR., has accepted responsibility for his offense, and therefore is entitled to an appropriate reduction, being 2 points, in the applicable base offense level under the sentencing guidelines.  At the time of sentencing, the United States will not object to this same determination provided defendant's conduct has continued to demonstrate compliance with the terms of U.S.S.G. § 3E1.1. . . . .
J.A. at 130.