**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Leandro PANDIELLO, Defendant–Appellant.**

**No. 98–2427.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 6, 1998.

Decided July 15, 1999.

Daniel L. Bella (argued), Office of the United States Attorney, Dyer, IN, for Plaintiff–Appellee.

Luke A. Casson (argued), Chicago, IL, for Defendant–Appellant.

Before RIPPLE, KANNE, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

In an effort to collect some drug debts from Julio Concepcion using less-than-gentle tactics, Leandro Pandiello and four other men invaded Concepcion's home, bound up members of his family, helped themselves to $2,000, and held the residents at gunpoint. Leaving Pandiello and two others at the house, the remaining two men forced Concepcion himself to take them to his workplace, where they hoped to find more money. There Concepcion managed to alert security guards to the unfolding drama, and the guards contacted the police. The police arrested the two suspects in the plant's parking lot and then returned to the house. Pandiello's companions fled in a van, but the police caught up with them. Pandiello himself tried to hide near the house. He too failed: the police found him in a ditch and arrested him.

This escapade earned all five men an indictment from the federal grand jury on charges that included conspiracy to commit hostage taking in violation of 18 U.S.C. § 1203(a), using and carrying a firearm during the commission of a crime of violence in violation of 18 U.S.C. § 924(c)(1), and conspiracy to commit extortion in violation of 18 U.S.C. § 1951. Pandiello pleaded guilty to these counts and was sentenced to concurrent 41 month terms for the two conspiracy offenses and a consecutive 60 month term for the firearm violation, for a total of 101 months. The

court also ordered him to pay restitution in the amount of $28,583.45. On appeal, he argues that the district court erred in imposing a two-level upward adjustment for bodily injury under § 2B3.2(b)(4)(A) of the Sentencing Guidelines, and that the court erred in its restitution order, both by imposing it for conduct that took place after he withdrew from the conspiracy and for failing to specify in sufficient detail the manner of his payment. While we reject his challenges to the upward departure and the general obligation to pay restitution, we conclude that the restitution order impermissibly delegated a judicial function and that the case must be remanded on this narrow point for further action by the district court.

**I**

We begin with Pandiello's challenge to the upward departure under U.S.S.G. § 2B3.2(b)(4)(A). Pandiello argues that the bodily injury enhancement to his sentence, so far as it depends on Concepcion's injuries, was not supported by the evidence. To the extent that the enhancement rested on injuries to Sara Cardona, Concepcion's common-law wife, Pandiello complains that his due process rights to notice and an opportunity to respond were violated when he did not receive an opportunity to contest the evidence of her injuries.

■ There was ample evidence to support the district court's factual conclusion that the assailants inflicted a bodily injury within the meaning of the Guidelines—a finding we review for clear error only. *United States v. Taylor*, 135 F.3d 478, 481 (7th Cir.1998). United States Sentencing Guidelines Manual § 2B3.2(b)(4) directs sentencing courts to increase the base-level of the relevant offense by two if any victim sustained bodily injury. Bodily injury is defined as "any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." *Id.* § 1B1.1 Appl. Note 1(b).

In fact, there was evidence before the court showing that the assailants caused bodily injury to both Concepcion and Cardona during the commission of the crimes.

At the sentencing hearing, FBI Agent Bradley Bookwalter testified that Concepcion told him that the defendants struck him and kicked him, and Bookwalter reported that he independently observed a red welt on Concepcion's forehead and indentations on his back that to Bookwalter looked like the imprint of a shoe. Pandiello argues that this testimony was inadequate to link Concepcion's injuries to the defendants, but we disagree. The judge found Agent Bookwalter's testimony credible, and this alone was enough to support the conclusion that Pandiello and his band injured Concepcion. Furthermore, Agent Bookwalter's testimony did not stand alone: Concepcion's and Cardona's accounts of the incident corroborated Agent Bookwalter's testimony. On this record, the court's conclusion cannot be called clear error.

■ Taking another tack, Pandiello also argues that red welts are not severe enough to fall within the embrace of the Guidelines' definition of bodily injury. This presents a legal question about the meaning of the Guidelines and hence triggers our *de novo* review. *Taylor*, 135 F.3d at 481. Nevertheless, we agree with the district court that § 2B3.2(b)(4)(A) can apply even if injuries do not require medical attention, so long as there is evidence in the record indicating that they were painful and obvious. The Guideline is worded in the alternative, calling for the upward adjustment for *either* an injury that is painful and obvious, *or* one of a type normally requiring medical attention. See *United States v. Hamm*, 13 F.3d 1126, 1127–28 (7th Cir.1994) (collecting cases holding that victims need not seek medical treatment, and that bumps, bruises, and slaps can all satisfy the Guidelines' requirements). Concepcion's red welts and the shoeprint mark on his back were pain-

ful and obvious, even if they did not require medical attention. His injuries alone therefore justified the district court's imposition of a two-level increase.

The district court also considered Cardona's injuries when it applied the bodily injury enhancement, even though the presentence report ("PSR") did not discuss Cardona as a separate victim for purposes of § 2B3.2(b)(4). The court did so of its own accord, after it had been presented, without defense objection, with Cardona's victim-impact statement (admitted to support the restitution request for her medical expenses) and her statement to the police (admitted to corroborate Agent Bookwalter's testimony that the defendants had struck and injured Concepcion). In the latter statement, Cardona had indicated that her arms were bruised and that she had a wrenched shoulder from being bound. Later, she got an x-ray to help diagnose and treat her persistent shoulder pain. Because the judge was familiar with these documents, and because they each discussed Cardona's injuries, he asked about Cardona in the context of considering the bodily injury enhancement. Eventually, he relied on both Concepcion's and Cardona's injuries to support his sentencing decision. Pandiello objected to the judge's "surprise" inquiry at the sentencing hearing, but he did not question the accuracy of the evidence or request any additional time to prepare a response.

■ On appeal, Pandiello contends that the district court's *sua sponte* reliance on its own observations about Cardona's injuries denied him his due process rights to notice and an opportunity to respond. The record shows, however, that Pandiello's basic due process rights were adequately protected. Rule 32 of the Federal Rules of Criminal Procedure governs sentencing procedures. It requires that "the court ... afford counsel for the defendant and for the Government an opportunity to comment on the probation officer's determinations [in the PSR] and on other matters relating to the appropriate sen-

tence...." Fed.R.Crim.P. 32(c)(1). As the reference to "other matters" implies, a sentencing judge may attend to more than the PSR when making sentencing decisions. To conclude otherwise and hold that a probation officer's PSR restricts the scope of a sentencing judge's inquiry would privilege the work of the assistant over that of the decisionmaker, a perverse result.

■ Nonetheless, Rule 32 implies that the defendant must have notice of the sentencing adjustments at issue and the government's basis for requesting them. Pandiello's problem is that the PSR is not the only permissible source of notice. Though the report often—if not usually—serves this function, the defense may be on notice in other ways. For example, in *United States v. Thomas*, 969 F.2d 352, 356–57 (7th Cir.1992), we approved the sentencing judge's use of additional drug quantity evidence to determine a defendant's relevant conduct, even though that evidence had been presented elsewhere than in the PSR's calculation of relevant conduct, because the defense was aware that the evidence was before the judge. Here, Pandiello knew of the contents of Cardona's victim-impact and police statements, and he allowed them to be placed before the court without objection. He therefore knew that the court had before it evidence from which it could conclude that Cardona's injuries, like Concepcion's, supported a bodily injury enhancement. Coupled with his knowledge that an enhancement under § 2B3.2(b)(4)(A) was at issue, this was enough. In addition, Pandiello had an opportunity to respond to the judge's use of the evidence to support a bodily injury enhancement during the sentencing hearing, and he took advantage of that opportunity.

■ It is true that Pandiello did not have advance notice that the evidence would be used to support the bodily injury enhancement based on injuries to Cardona, and that advance notice may have made

his opportunity to respond more meaningful. But Pandiello did learn about the judge's alternate theory before the sentencing hearing was over. He could have, but did not, request a continuance so that he could prepare a better objection. Even now, he has not suggested how an opportunity to respond further might have helped his case. See *United States v. Trussel*, 961 F.2d 685, 692 (7th Cir.1992). Moreover, even if it was error for the judge to draw conclusions from properly admitted evidence on his own initiative, any error was surely harmless. See Fed.R.Crim.P. 52(a). Evidence of Cardona's bodily injuries was cumulative to Concepcion's proven injuries, and the latter alone were enough to support the bodily injury enhancement to Pandiello's sentence. We therefore reject both the evidentiary challenge and the due process challenge Pandiello has raised to the bodily injury enhancement.

## II

 The court also ordered Pandiello to pay restitution, jointly and severally with his four co-defendants, in the amount of $28,583.45. That amount represented the sum of the damage to a car and truck that two of his co-defendants commandeered after police disabled their fleeing van, as well as the medical expenses Cardona incurred for her x-ray. In his attack on the order of restitution, Pandiello seeks to evade vicarious financial liability for that portion of the restitution order which stems from the damage done during his co-defendants' flight from the Concepcion home. He argues both that the vehicle chase was not foreseeable to him and that he had withdrawn from the conspiracy by the time it occurred. We review a district court's determination of the proper amount of restitution for an abuse of discretion, and we will disturb it only if the sentencing court relied on inappropriate factors or failed to use any discretion at all. *United States v. Emerson*, 128 F.3d 557, 566 (7th Cir.1997).

We see no basis for the contention that a vehicle chase was unforeseeable to Pandiello. He himself admitted that he heard the police shoot at one of his co-conspirators as he scrambled away from the residence, a course of events that must have indicated that his co-conspirators, like himself, had opted to flee rather than surrender. Although Pandiello had no crystal ball, the district court reasonably concluded that he could have foreseen a high-speed chase and the risks it entailed.

 We are equally unmoved by Pandiello's contention that he had withdrawn from the conspiracy by the time his co-conspirators damaged the car and truck. He represents that he had already been arrested by the time of the chase, and that his arrest terminated his role in the conspiracy and any attendant liability as a matter of law. This a misstatement of both law and fact. The evidence introduced at the sentencing hearing showed that Pandiello was not hauled out of his hiding place in the ditch until after his co-conspirators had already been arrested. But even if he had been arrested before his co-conspirators, an arrest alone is insufficient to achieve a withdrawal effective to eliminate liability for co-conspirators' subsequent acts. See *United States v. Wilson*, 134 F.3d 855, 863 (7th Cir.1998). In addition to the termination of the defendant's active role in the conspiracy, which an arrest accomplishes, withdrawal requires an affirmative act to defeat or disavow the purpose of the conspiracy, such as a full confession to the authorities. *Id.*; see also *United States v. Bullis*, 77 F.3d 1553, 1562 (7th Cir.1996); *United States v. Sax*, 39 F.3d 1380, 1386 (7th Cir.1994). Hiding in a ditch while seeking to evade detection obviously does not qualify as an affirmative act of withdrawal; neither, without more, does the mere fact of arrest. If Pandiello wanted to avoid co-conspirator liability, he could have seized the opportunity to surrender and confess. But he did not. The trial court did not abuse its discretion when it considered the acts of

688

his co-conspirators in crafting Pandiello's order of restitution.

 We are more concerned by Pandiello's final assignment of error. Pandiello contends that the restitution order diverged from the statutory requirements of 18 U.S.C. §§ 3663 and 3664 in certain particulars. Because Pandiello did not assert this objection at the sentencing hearing, we review it for plain error only. Fed. R.Crim.P. 52(b); *United States v. Martin,* 128 F.3d 1188, 1190 (7th Cir.1997). Given this standard of review, only one of his contentions merits discussion.

 The restitution order directed that "[t]he restitution shall be paid in equal monthly installments during the period of incarceration through the Inmate Financial Responsibility Program" and in installments of $200 per month during the period of supervised release. Though this order makes clear that Pandiello is to make monthly payments and sets the amount of these payments once Pandiello leaves prison, it does not specify how much must be paid monthly while Pandiello is incarcerated. We doubt that the district judge intended Pandiello to decide, so apparently the amount to be paid is left to the judgment of the Inmate Financial Responsibility Program ("IFRP").

This may seem like an insignificant detail, but in fact it implicates a fundamental principle of our form of government. There is a well developed body of law in this circuit and elsewhere holding that a court may not delegate to another, usually a probation officer, its judicial authority to set the amount or timing of restitution or fine payments. *E.g., United States v. Arellano,* 137 F.3d 982, 986 (7th Cir.1998); *United States v. Mohammad,* 53 F.3d 1426, 1438–39 (7th Cir.1995); *United States v. Murphy,* 28 F.3d 38, 42 (7th Cir.1994); *United States v. Ahmad,* 2 F.3d 245, 248–49 (7th Cir.1993); *United States v. Boula,* 997 F.2d 263, 269 (7th Cir.1993); *United States v. Mortimer,* 94 F.3d 89, 91 (2d Cir.1996); *United States v. Miller,* 77 F.3d 71, 78 (4th Cir.1996); *United States v. Graham,* 72 F.3d 352, 356–57 (3d Cir. 1995). This court has not yet had occasion to pass on the propriety of delegation to the IFRP rather than to a probation officer. But the concerns about shifting responsibility from the Article III judge to another entity are the same in both cases. We therefore conclude, as did the Second Circuit, that delegation of authority to set the timing or amount of restitution payments is impermissible in this situation as well. *Mortimer,* 94 F.3d at 91.

 Moreover, this defect is significant enough to constitute plain error. An error is "plain" if it is clear under established law and affects a substantial right. *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Even then, judicial discretion demands that the error be corrected only when it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 736, 113 S.Ct. 1770. As the numerous cases cited above illustrate, established law does not permit the judge to delegate authority over a core sentencing decision. Such unauthorized delegation "deprives the defendant of a substantial right" and constitutes "a serious structural defect" affecting the integrity of the judicial proceedings. *Mohammad,* 53 F.3d at 1439; see also *United States v. Albro,* 32 F.3d 173, 174 n. 1 (5th Cir.1994) (*per curiam*).

Accordingly, while we AFFIRM Pandiello's sentence, we must VACATE the restitution order and REMAND this matter to the district court for entry of a restitution order that specifies the amount as well as the timing of restitution payments.