OPINION EN BANC
SELYA, Circuit Judge.
After a jury convicted defendant-appellant Joel Padilla on a charge of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), the district, court imposed, as part of his sentence, a term of supervised release. As a condition of that term, the court ordered that Padilla submit to no fewer than three drug tests, see 18 U.S.C. § 3583(d), and delegated to the probation officer the authority to determine the maximum number of tests to be administered. Padilla lodged no contemporaneous objection.
On appeal, a panel of this court affirmed Padilla’s conviction but vacated the disputed supervised release condition. United *215 States v. Padilla, 393 F.3d 256, 259 (1st Cir.2004) (Padilla I) (per curiam). The panel concluded that the supervised release condition, as framed, granted the probation officer unbridled discretion to determine the maximum number of drug tests and that, therefore, it constituted an improper delegation of judicial authority. Id. at 258 (relying on United States v. Meléndez-Santana, 353 F.3d 93, 103, 106 (1st Cir.2003)). Despite the fact that this claim of error was raised for the first time on appeal, the panel vacated the disputed supervised release condition and remanded for resentencing without engaging in conventional plain error review. Id. at 258-59. That decision was dictated by Melén-dez-Santana’s treatment of a virtually identical error. See id. at 258 (citing Meléndez-Santana, 353 F.3d at 106); see also United States v. Wogan, 938 F.2d 1446, 1449 (1st Cir.1991) (“We have held, time and again, that in a multi-panel circuit, prior panel decisions are binding upon newly constituted panels in the absence of supervening authority sufficient to warrant disregard of established precedent.”).
Two members of the panel advocated that the en banc court reexamine that portion of the Meléndez-Santana opinion that required vacation of the disputed supervised release condition without resort to conventional plain error analysis. See Padilla I, 393 F.3d at 259, 261 (Campbell and Selya, JJ., concurring). Subsequently, a majority of the judges of this court in active service voted, sua sponte, to withdraw the panel opinion in relevant part and rehear en banc “the questions of whether, to what extent,, and in what manner plain-error review applies to improper delegations of sentencing authority of the type” that had occurred in Padilla I. United States v. Padilla, 403 F.3d 780, 780 (1st Cir.2005) (Padilla II) (order granting, rehearing en banc).
We have received supplemental briefs and heard oral argument. We now overrule that portion of the panel opinion in Meléndez-Santana that requires automatic reversal for delegation errors, hold that conventional plain error principles must be applied in such cases, proceed to analyze the delegation error here under those principles, and conclude that despite the delegation error, Padilla’s sentence may stand.
/.

Background

In Meléndez-Santana, a panel of this court examined the scope of the authority that a district court may entrust to a probation officer with respect to the imposition- of drug-testing conditions during terms of supervised release. By statute:
The court shall ... order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release and at least 2 periodic drug tests thereafter (as determined by the court) for use of a controlled substance.
18 U.S.C. § 3583(d).
In-Meléndez-Santana, the district court had delegated to the probation officer the authority to order, at his discretion, drug tests beyond the minimum number (three) set by the foregoing statute. 353 F.3d at 102. On appeal, the panel held that the statutory clause “as determined by the court” signifies “that the court, not the probation officer, must decide how many tests a defendant should be forced to undergo.” Id. at 103. The panel added, however, that:
This responsibility does not mean that the court has to specify the exact number of tests to be performed. Consis *216 tent with the statutory language, it may specify a range, allowing probation officers to exercise discretion on the number of drug tests to be performed within that range.
Id. Thus, it determined that the district court had erred in imposing the particular drug-testing condition because, by “vest[ing] the probation officer with the discretion to order an unlimited number of drug tests,” id., it had improperly delegated its judicial authority, id. at 106.
The defendant in Meléndez-Santana had failed to raise any objection to the drug-testing condition be’fore the lower court. Id. at 102. Although the panel acknowledged that the claimed error had been forfeited, it did not engage in conventional plain error analysis but, rather, seemed to treat the delegátion error as requiring automatic reversal. See id. at 106.
The delegation error noted in Meléndez-Santana proved to be a recurrent one. Padilla’s case illustrates the point. The district court sentenced him to a 110-month incarcerative term, followed by a three-year supervised release period. At the disposition hearing, the court delineated the following condition of supervised release:
He must submit to such drug treatment and' testing as the probation office deems appropriate. This can go beyond the minimal one drug test within 15 days of . release and two periodic drugs tests thereafter, but is designed to permit the probation officer to make judgments about drug testing in Mr. Padilla’s case and drug treatment if they believe that it is appropriate.
The court incorporated these instructions into the written judgment, which stated:
The defendant shall participate in a substance abuse treatment program, including testing, as directed by the U.S. Probation Officer, and the defendant shall submit .to drug testing as directed by the U.S. Probation Officer.
United States v. Padilla, No. 1:02-CR-10266 (D. Mass. June 10, 2003) (unpublished).
Padilla did not raise any objection to the drug-testing condition in the district court. On appeal, however, that error moved front and center. The panel determined that the sentencing court, by failing to cap the number of drug tests that the probation officer could mandate, had violated section 3583(d). See Padilla I, 393 F.3d at 258. The government, conceding error, urged the panel to leave the sentence intact on the ground that the error neither affected Padilla’s substantial rights nor impugned the integrity of the proceedings. The panel concluded that it was bound by the course adopted in Meléndez-Santana and therefore rejected the government’s argument. Id.
Two members of the panel wrote separately, however, to “express [their] discomfiture with the approach that the Melén-dez-Santana panel took in determining what consequences attended the delegation error.” Id. at 259 (Campbell and Selya, JJ., concurring). These judges noted that the practice of automatically vacating a release condition because of • a delegation error “effectively treat[s] [such a] mistake as one of ‘the limited class of structural errors’ that warrant correction regardless of other considerations.” Id. (quoting United States v. Cotton, 535 U.S. 625, 632, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002)). Decrying this approach, the concurring judges encouraged en banc review so that the full court could consider the appropriate treatment of unpreserved delegation errors. Id. at 261. In due course, the full court ordered rehearing en banc. Padilla II, 403 F.3d at 780.

*217
II.

Analysis

Padilla presents two arguments in support of his importuning that the drug-testing condition must be vacated. First, he posits that the improper delegation of sentencing authority is a structural error and, thus, requires automatic reversal. Second, he maintains that, in all events, the delegation error satisfies the conventional quadripartite test for plain error review and, on that basis, entitles him to the requested relief. The government, for its part, strives to persuade us that no error occurred. It also argues that unpre-served delegation errors are not structural and do not require automatic reversal. Finally, it asserts that any delegation error that may have transpired does not warrant correction.
We begin by explaining why we rebuff the government’s effort to inject a new issue into the case. We then elucidate the standard of review, examine the nature of the unpreserved delegation error, and mull its consequences.

A.

Scope of Review

The government belatedly urges that Meléndez-Santana’s principal holding was incorrect because a delegation of the type involved here does not contravene 18 U.S.C. § 3588(d). We summarily reject that exhortation as beyond the proper scope of our review. We briefly explain our rationale.
An appellate court enjoys broad discretionary power to-grant rehearing en banc. See W. Pac. R. Corp. v. W. Pac. R. Co., 345 U.S. 247, 250, 73 S.Ct. 656, 97 L.Ed. 986 (1953); see also 28 U.S.C. § 46(c). The scope of en banc review ordinarily is delimited by the order convening the en banc court. See, e.g., United States v. Councilman, 385 F.3d 793, 793 (1st Cir.2004) (per curiam) (order granting rehearing en banc) (requesting that .the litigants address specifically defined issues); United States v. Brown, 263 F.3d 1, 1 (1st Cir.2001) (per curiam) (order granting rehearing en banc) (enumerating questions of specific concern to the court): Here, the order, by describing the district court’s action as an “improper delegation! ] of sentencing authority,” Padilla II, 403 F.3d at 780, clearly indicated that the question of whether a court errs when it imposes a supervised release condition of the type described in Meléndez-Santana was beyond the scope of the en banc proceeding and that the full court would focus on the narrower question of how an unpreserved Meléndez-Santana error should be treated on appeal. See id.
Such a circumscription of the issues to be considered is well within the discretion of the en banc court. See 16A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3981.1 (3d ed. 1999 & Supp.2005) (noting that “the grant of en banc hearing may be limited in advance to an identified issue”); see also Asherman v. Meachum, 957 F.2d 978, 984 (2d Cir.1992) (en banc). The government could have asked us to frame the issues on rehearing more broadly. It did not do so.
To be sure, the en banc court has discretion to review all the issues presented by an appeal, even though the order convening the en banc court indicates a more isthmian focus. Here, however, the equities militate strongly against taking such an extraordinary step. After all, the government confessed error in the district court. See Padilla I, 393 F.3d at 258. Moreover, it did not seek either panel rehearing or rehearing en banc in Meléndez-Santana. And, finally, it has conceded *218 Meléndez-Santana error in a myriad of cases since we handed down the Meléndez-Santana decision. See, e.g., United States v. Villafane-Jimenez, 410 F.3d 74, 80 (1st Cir.2005); United States v. Figuereo, 404 F.3d 537, 542 (1st Cir.2005). That series of actions makes it unseemly for us to reexamine Meléndez-Santana’s finding of error on an eleventh-hour request. Cf. Anderson v. Beatrice Foods Co., 900 F.2d 388, 397 (1st Cir.1990) (opinion on denial of rehearing) (explaining that a party generally is not permitted to raise a new issue for first time on a petition for rehearing); United States v. Hall, 63 F. 472, 475 (1st Cir.1894) (per curiam) (similar). Because the order convening the en banc court does not encompass the issue that the government now seeks to explore, we deem it inappropriate to consider that issue. Consequently, we will not reexamine the Meléndez-Santana court’s conclusion that section 3583(d) prohibits a delegation of the type at issue here.

B.

Standard of Review

After imposing sentence (including the now-disputed supervised release condition), the district court inquired of both sides whether there was “[a]nything further that we need to take up” before concluding the proceeding. Although afforded ample opportunity to do so, Padilla voiced no objection to the drug-testing condition. That default constrains our inquiry.
A court of appeals typically reviews a sentencing court’s imposition of a condition of supervised release for abuse of discretion. See United States v. Brown, 235 F.3d 2, 3 (1st Cir.2000). That standard shifts, however, when “the sentencing court affords the defendant an opportunity to object to the condition but the defendant holds his tongue.” Id. In such circumstances, appellate review is for plain error. See id.; see also United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir.2002) (explaining that plain error review applies when a party has forfeited a right by failing to assert it in a timely manner).
From the defaulting party’s perspective, “[t]he plain error hurdle is high.” United States v. Hunnewell, 891 F.2d 955, 956 (1st Cir.1989). Under that regime, a reviewing court may set aside a challenged portion of a criminal sentence if, and only if, the appellant succeeds in showing “(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant’s substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings.” United States v. Duarte, 246 F.3d 56, 60 (1st Cir.2001).
Plain error review is not entirely a judge-made construct. In the first instance, it derives from Fed.R.Crim.P. 52(b), which provides in pertinent part that “[a] plain error that affects substantial rights may be considered although it was not brought to the court’s attention.” Properly viewed, then, the plain error test constitutes a mandatory limitation on a federal appellate court’s remedial authority. See United States v. Olano, 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (stating that Rule 52(b) “provides a court of appeals a limited power to correct errors that were forfeited because not timely raised in district court”).
Our authority to notice forfeited errors is hedged by the doctrinal elements recognized in Olano. See id. at 732, 113 S.Ct. 1770. The appellant must carry the devoir of persuasion as to each of those four elements. See United States v. Vega Molina, 407 F.3d 511, 521 (1st Cir.2005). *219 Even if he makes the requisite showing on the first three elements, a reviewing court retains plenary discretion not to correct the error if it concludes that the error does not seriously affect the fairness, integrity, or public reputation of the judicial proceedings as a whole. Olano, 507 U.S. at 732, 113 S.Ct. 1770.

C.

Structural Eiror

The Supreme Court has recognized the existence of a tiny class of structural errors — errors that may not be found harmless under Fed.R.Crim.P. 52(a) because they deprive a criminal defendant of those basic protections that enable a trial to serve as a vehicle for reliably determining guilt or innocence. See Arizona v. Fulminante, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); see also United States v. Perez-Ruiz, 353 F.3d 1, 17 (1st Cir.2003). Padilla’s first argument seeks to grasp this slender lifeline. He asserts that the delegation error here is structural in nature and, thus, is per se reversible. This assertion is doubly flawed.
In the first place, this is not a structural error case at all. A structural error is a “defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.” Fulminante, 499 U.S. at 310, 111 S.Ct. 1246. Unlike a garden-variety trial error, a structural error “transcends the criminal process,” id. at 311, 111 S.Ct. 1246, by depriving a defendant of those “basic protections [without which] a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.” Rose v. Clark, 478 U.S. 570, 577-78, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (citation omitted).
The category of structural error has been reserved for a “very limited class of cases.” Johnson v. United States, 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). That class includes only the most pervasive and debilitating errors. Paradigmatic examples are a total withholding of the right to counsel at trial, Gideon v. Wainwright, 372 U.S. 335, 342-43, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), a denial of the right of self-representation at trial, McKaskle v. Wiggins, 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984), or the specter of a biased judge presiding oyer a case, Tumey v. Ohio, 273 U.S. 510, 535, 47 S.Ct. 437, 71 L.Ed. 749 (1927). A more recent example is the denial of the right to a jury verdict of guilt beyond a reasonable doubt. See Sullivan v. Louisiana, 508 U.S. 275, 280-82, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). The common denominator is that such errors infect “[t]he entire conduct of the trial from beginning to end.” Fulminante, 499 U.S. at 309, 111 S.Ct. 1246.
In contrast, a delegation error of the type at issue here affects only a single aspect of a single phase of a criminal proceeding — and a tangential aspect at that. This is hardly the stuff of structural error. Compare Sullivan, 508 U.S. at 281, 113 S.Ct. 2078 (failing to provide a correct reasonable doubt instruction “vitiates all the jury’s findings” and therefore constitutes structural error), with Neder v. United States, 527 U.S. 1, 10-11, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (failing to instruct the jury on a single element of an offense is a non-structural error in part because its impact is isolated and does not infect the jury’s other conclusions). The delegation error here neither contaminated the proceeding as a whole nor called into serious question its fundamental fairness. *220 Given its limited reach, the error is nonstructural. Cf., e.g., Perez-Ruiz, 353 F.3d at 17 (finding that a sentencing error, in contravention of the rule in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), was not a structural error).
In the second place, even if we were to adopt Padilla’s taxonomy and classify the delegation error as structural, that classification would not aid his cause. In Johnson, the Court refuted the very premise on which Padilla’s “automatic reversal” assertion rests. There, the appellant argued that her forfeited challenge fell outside the strictures of Olano because it was “structural.” Johnson, 520 U.S. at 466, 117 S.Ct. 1544. Finding that “the seriousness of the error claimed does not remove consideration of it from the ambit of the Federal Rules of Criminal Procedure,” the Court held that forfeited errors, even if structural, are subject to the imperatives of Rule 52(b). Id. We reached the same conclusion in United States v. Fazal-Ur-Raheman-Fazal, 355 F.3d 40, 47 n. 5 (1st Cir.2004).
That ends this aspect of the matter. Creative labeling does not assist Padilla here. On any view of the record, his claim of error is properly considered within the confines of plain error review.[1]

D.

Plain Error

Padilla’s remaining argument is that this error satisfies the conventional plain error test. Although that test is rigorous,' its first two steps present no problem for Padilla; since Meléndez-San-tana is the law of this circuit, we must regard delegation of the power to set the maximum number of drug tests as clear and obvious error. See Meléndez-Santana, 353 F.3d at 103-06. The error is not that the district court left the probation officer room to determine the number of drug tests; rather, it is that the court failed to limit the delegated discretion by capping that number. See id. at 103.
The third step of the plain error pavane requires the appellant to demonstrate that the error affects substantial rights. Duarte, 246 F.3d at 60. The Olano Court explained that “in most cases [this phrase] means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings.” 507 U.S. at 734, 113 S.Ct. 1770. Normally, the appellant must make a particularized showing of prejudicial effect in order to satisfy this element. See United States v. Dominguez Benitez, 542 U.S. 74, 124 S.Ct. 2333, 2339, 159 L.Ed.2d 157 (2004); Olano, 507 U.S. at 735, 113 S.Ct. 1770.
In Dominguez Benitez, the Court discussed the “affecting substantial rights” element of the plain error test and noted that the prejudicial effect on the outcome of the proceeding must be “substantial and *221 injurious.” 124 S.Ct. at 2339 (quoting Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). In other words, the proponent — the party asserting plain error — must show “a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different.” Id. (alteration in original) (internal quotation marks omitted).
In United States v. Antonakopoulos, 399 F.3d 68 (1st Cir.2005), this court found the Dominguez Benitez standard applicable to forfeited sentencing errors. Id. at 78-79. In such cases, the appellant, in order to satisfy the prejudice prong, must limn circumstances indicating a reasonable probability that the trial court, but for the error, would have imposed a different, more favorable sentence. Id. at 75. That standard governs here.
The case at hand is peculiar in that we are dealing with two unknown variables: the limit the district court would have set on drug tests and the number of tests that the probation officer will demand. It is, therefore, nearly impossible for Padilla to show a reasonable probability that he is worse off because the probation officer, rather than the district court, has the power to determine the maximum number of drug tests. Under these circumstances, we do not see how Padilla can demonstrate that, but for the delegation error, the supervised release condition likely would have been more favorable to him. This, in turn, undercuts his argument that the error should be corrected. See Jones v. United States, 527 U.S. 373, 394-95, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999) (“Where the effect of an alleged error is so uncertain, a defendant cannot meet his burden of showing that the error actually affected his substantial rights.”).
We hasten to add that our decision need not rest on this point alone. Even were we to assume, for argument’s sake, that Padilla somehow could clear the third-prong hurdle — a dubious proposition at best — the fourth element of the plain error formulation poses an insuperable obstacle. In our view, this delegation error did not in any way impugn the fairness, integrity, or public reputation of the criminal proceeding as a whole. Thus,, we would decline in any event to exercise our discretion to correct it. See Duarte, 246 F.3d at 60.
Our rationale is straightforward: the error in question is simply not of such magnitude or consequence that it would undermine faith in the judicial system were it to stand uncorrected. This determination recognizes that an appellate court’s remedial authority under Rule 52(b) is circumscribed. See Johnson, 520 U.S. at 466, 117 S.Ct. 1544. A party’s best safeguard against judicial error is a contemporaneous objection. Where, as here, no such objection was interposed, plain error principles cannot be used as a surrogate for the foregone objection.
Seen in that light, it is readily apparent that plain error review is not a panacea for every perceived misstep in the trial process. The authority to notice plain errors, properly exercised, does not allow a reviewing court to correct “the ordinary backfires — whether or not harmful to a litigant’s cause — which may mar a trial record.” United States v. Griffin, 818 F.2d 97, 100 (1st Cir.1987). It follows that this power should be employed sparingly to correct grave or consequential errors — those that “seriously affect the fundamental fairness and basic integrity of the proceedings conducted below.” Id.
The error here, considered within the encincture of the case as a whole, is not *222 one of those grave or consequential errors. The placement of authority to set the maximum number of drug tests in the hands of the judge is a statutory choice; it is neither a matter of constitutional necessity nor a condition essential to the fair administration of justice.[2] Thus, Article III is implicated only by way of the statutorily prohibited delegation, and to the extent that the statute gives rise to any personal right to an Article III adjudicator, no procedural principle is better settled than that a right may be forfeited by neglecting to assert it in a timeous manner before the nisi prius court. See Olano, 507 U.S. at 731, 113 S.Ct. 1770; Yakus v. United States, 321 U.S. 414, 444, 64 S.Ct. 660, 88 L.Ed. 834 (1944).
To cinch matters, we do not perceive anything fundamentally unfair about the delegation of authority to the probation officer such as occurred in this case. That error concerns a matter that is incidental to the defendant’s sentence as opposed to one of its core components. Cf. United States v. York, 357 F.3d 14, 21 (1st Cir.2004) (distinguishing between “significant penological decision[s],” such as the determination of whether a defendant will be subject to polygraph testing on release, and the details related to effectuating such decisions, such as the frequency of the testing). In the grand scheme of errors— from those that are tolerated as inevitable imperfections in a judicial system administered by human beings to those that are offensive to the very principles on which that system is based — the error here seems to be solidly nestled within the former category.
In an endeavor to convince us that this delegation error warrants correction, Padilla cites three cases involving forfeited delegation errors in the context of restitution. Those cases fail to alter our conclusion that the instant error does not justify an exercise of our remedial authority.
In two of the three decisions, the court of appeals merely vacated the lower court’s restitution order without any explication regarding the applicability of the third and fourth elements of the plain error test. See United States v. Overholt, 307 F.3d 1231, 1256 (10th Cir.2002); United States v. Albro, 32 F.3d 173, 174 n. 1 (5th Cir.1994) (per curiam).[3] The third decision, United States v. Pandiello, 184 F.3d 682 (7th Cir.1999), is no more convincing. There, the court concluded that the third and fourth elements of the plain error test were satisfied because a delegation error involving the failure to specify the amount of each restitution payment had occurred. Id. at 688. The court’s sole explanation for this conclusion was its characterization of the error as “a serious structural defect.” Id. (quoting United States v. Mohammad, 53 F.3d 1426, 1439 (7th Cir.1995)). We have rejected that .characterization with respect to the delegation error at issue here. See supra Part II(C).
The bottom line is simply this: the cases relied upon by Padilla are out of step with our plain error jurisprudence. For that reason, we decline to follow them.
If more were needed — and we doubt that it is — another reason counseling against the exercise of our corrective dis *223 cretion is the limited effect of the error. Should the probation officer require an inordinate- number of drug tests or otherwise misuse his wrongly delegated authority, the defendant, notwithstanding his original forfeiture, has at least- a partial remedy. A specific statute, 18 U.S.C. § 3583(e)(2), permits the district court, on motion, to “modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release.” In turn, the Criminal Rules require the court, prior to effecting such a modification, to “hold a hearing, at which the person has the right to counsel.”[4] Fed.R.Crim.P. 32.1(c)(1). The advisory committee’s 1979 note to Fed.R.Crim.P. 32.1(b) (the section that, prior to the 2002 amendments, contained the language that now appears in Rulé 32.1(c)) states that “[t]he probationer should have the right to apply to the sentencing court for a clarification or change of conditions”; that “the probationer should be able to obtain resolution of a dispute over an ambiguous term or the meaning of a condition without first having to violate it”; and that in cases of “unreasonableness on the part of the probation officer, the probationer should have recourse to the sentencing court when a condition needs clarification or modification.” Fed.R.Crim.P. 32.1 advisory eom-mittee’s note; see also 3 Charles Alan Wright, Nancy J. King, Susan R. Klein & Sarah N. Welling, Federal Practice and Procedure § 543 (3d ed. 2004 & Supp. 2005). We believe that this remedial regime provides adequate means for redress should the probation officer attempt to ride roughshod.
In the last analysis, Padilla’s argument that this court should correct the error boils down to the fact that the error occurred.[5] He fails to make the case that this error, in comparison to other errors for which relief has been denied on plain error review, is somehow exceptional. To accept his suggestion that we must correct the error simply because section 3583(d) prohibits what the district court did would eviscerate the plain error test.

III.

Conclusion

This en banc proceeding is less about the particulars of Padilla’s case and more about the need to preserve the integrity of plain error review. The plain error doctrine is premised on the assumption that parties must take responsibility, for protecting their legal rights and, accordingly, that only the clearest and most serious of forfeited errors should be corrected on appellate review. See Dominguez Ben *224 itez, 124 S.Ct. at 2340; Olano, 507 U.S. at 731, 113 S.Ct. 1770; Griffin, 818 F.2d at 100. Courts must be scrupulous in hewing to that line.
So it is here: while a district court commits error when it orders drug testing under section 3583(d) but fails to establish the maximum number of tests that the probation officer can administer, we discern no reason why that sort of bevue warrants correction under the jurisprudence of plain error. See Dominguez Benitez, 124 S.Ct. at 2340 (explaining that the plain error standard, properly administered, “should enforce the policies that underpin Rule 52(b) generally, to encourage timely objections and reduce wasteful reversals-by demanding strenuous exertion to get relief for unpreserved error”).
We need go no further. Because the defendant has not demonstrated that a delegation error of the type committed here satisfies either the third or the fourth elements of the applicable test, we deny the relief requested and affirm his sentence, including the disputed supervised release condition.

Affirmed.

. The Supreme Court has not yet reached the more sophisticated question of whether a structural error necessarily affects substantial rights, thereby automatically satisfying the third element of the plain error test. See Johnson, 520 U.S. at 469, 117 S.Ct. 1544 (declining to address this, question); Olano, 507 U.S. at 735, 113 S.Ct. 1770 (flagging the issue but declining to consider it). Three courts of appeals have concluded that structural errors, by their nature, satisfy the prejudice prong of the plain error test. See United States v. Recio, 371 F.3d 1093, 1101 (9th Cir.2004); United States v. Vazquez, 271 F.3d 93, 100 (3d Cir.2001); United States v. David, 83 F.3d 638, 646-47 (4th Cir.1996). Similarly, this court has stated that " 'structural error’ ... is per se prejudicial.” United States v. Mojica-Baez, 229 F.3d 292, 309 (1st Cir.2000) (dictum). Because the claimed error here is not structural in nature, we need not address that question.

. Indeed, as the panel noted in Meléndez-Santana, “prior to the enactment of Section 3583(d) as part of the Violent Crime Control and Law Enforcement Act of 1994, probation officers ... had the authority to establish the maximum number of drug tests to be performed.” 353 F.3d at 106 n. 13.

. The Albro court made a point of indicating that its finding of plain error was case-specific. 32 F.3d at 174 n. 1.

. Two exceptions apply to this requirement. A hearing is not necessary (i) if the defendant waives the right to one or (ii) if the relief sought is favorable to the defendant, does not extend the term of release or probation, and the government has not objected to the modification after receiving notice and an opportunity to respond. See Fed.R.Crim.P. 32.1(c)(2).

. Padilla has not argued that the error in question ought to provoke an exercise of this court’s supervisory power. We mention this possibility only because of the Supreme Court’s decision in Nguyen v. United States, 539 U.S. 69, 123 S.Ct. 2130, 156 L.Ed.2d 64 (2003). There, in a 5-4 decision, the Court held that a Ninth Circuit panel that included a non-Article III judge was improperly constituted under 28 U.S.C. § 292(a) and corrected the forfeited error through an exercise of its supervisory powers. See id. at 74—81, 123 S.Ct. 2130. This case is distinguishable in that the mis-delegation of authority does' not involve a drastic departure from "the accepted and usual course of judicial proceedings,” id. at 74, 123 S.Ct. 2130 (internal quotation marks omitted), nor does the error deal with "a statutory provision that embodies a strong policy concerning the proper administration of judicial business,” id. at 81, 123 S.Ct. 2130 (internal quotation marks omitted).