# In the

# United States Court of Appeals
## For the Seventh Circuit
_____

No. 06-1275

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MICHAEL E. SAWYER,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 CR 770—**Ronald A. Guzmán**, *Judge.*

_____

No. 06-1614

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

PATRICK DUNCAN,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:05-CR-30025-001-MJR—**Michael J. Reagan**, *Judge.*

_____

No. 06-4030

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

TERRELL ROGERS,

*Defendant-Appellant*.

——————————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 CR 758—**Blanche M. Manning**, *Judge*.

——————————

ARGUED OCTOBER 2, 2007—DECIDED APRIL 9, 2008

——————————

Before EASTERBROOK, *Chief Judge*, and MANION and
WILLIAMS, *Circuit Judges*.

EASTERBROOK, *Chief Judge*.    In each of these appeals,
the sole argument is that the district court committed
plain error by not specifying an installment plan for the
payment of restitution. In one of the three cases the dis-
trict judge set a plan (which we call a "schedule" fol-
lowing the statutory usage) to begin after release from
custody; this defendant maintains that doing so del-
egated schedule-setting during imprisonment to the
Bureau of Prisons. In the other cases the district judge
ordered all restitution to be paid immediately. The
judges in these two cases announced schedules orally
but failed to incorporate them into the judgments, which
state unconditionally that all restitution is due "immedi-
ately"; a judge's oral statements are not enforceable

when an unambiguous judgment provides otherwise. None of the three defendants protested in the district court. We conclude that the first decision is correct and that the oversight in the others need not be corrected on appeal under the plain-error doctrine. See Fed. R. Crim. P. 52(b).

All three defendants pleaded guilty, and for current purposes their crimes don't matter. Michael Sawyer was sentenced to 51 months' imprisonment and ordered to pay $1,386,082 as restitution. The judgment provides that the full sum is due immediately. Patrick Duncan was sentenced to 96 months' imprisonment plus $177,727 as restitution. The judgment provides that "[p]ayments are due immediately" but does not deal with time in prison other than to say that money "may be paid from prison earnings in compliance with the Inmate Financial Responsibility Program." After release, Duncan must pay $100 per month or 10% of his net earnings, whichever is greater. Terrell Rogers was sentenced to 51 months' imprisonment plus $1,837 as restitution. The judgment provides that the full sum is due immediately. All three defendants assert that they are unable to pay the whole award now, and that 18 U.S.C. §3664(f)(2) therefore required the district judges to set a schedule of payments. See *United States v. Day*, 418 F.3d 746, 751–57 (7th Cir. 2005). The prosecutors concede the point for all three defendants; we accept that concession.

Duncan maintains that the district judge should have specified how much he must pay each of his 96 months in prison. To require some payment, while leaving the amount open, is to delegate a judicial task to the Bureau of Prisons, Duncan insists. Yet where's the "delegation"? In civil litigation, a judgment creditor chooses how soon

(if at all) to collect; no one thinks of this as a delegation of judicial power to a private litigant. State law may establish exemptions and limit the extent of attachment or garnishment to collect a judgment, but no power has been delegated from the federal judge to the state. As for the Bureau of Prisons: it does not need judicial permission to remit money from a prisoner's account, with or without the prisoner's assent. It has ample authority to set the terms on which inmates are held. Whether inmates make any money during their captivity, and, if they do, how much must be paid to creditors, are subjects well within the authority of the Executive Branch. See 28 C.F.R. §545.11 and Program Statement P5380.08 (amended Aug. 15, 2005), which set out the details of the Inmate Financial Responsibility Program.

Courts are not authorized to override the Bureau's discretion about such matters, any more than a judge could dictate particulars about a prisoner's meal schedule or recreation (all constitutional problems to the side). Prisoners dissatisfied with a warden's administration of the Inmate Financial Responsibility Program may appeal within the Bureau of Prisons, see 28 C.F.R. §545.11(d), and may be able to obtain judicial review of the Bureau's final decision under the Administrative Procedure Act. 5 U.S.C. §702. Review under the APA is not plenary; it is limited to a search for legal errors and arbitrary application. 5 U.S.C. §706(2). Limits created by the APA cannot be evaded by issuing a peremptory direction to the Bureau of Prisons as part of the judgment of conviction. What a court is not entitled to do it is certainly not required to do.

The authority of the Executive Branch of the federal government does not depend on, or represent, any

"delegation" of power by the Judicial Branch. A judge who turns scheduling over to a probation officer does delegate authority, because the probation officer's only power stems from the court. See *United States v. Ahmad*, 2 F.3d 245, 249 (7th Cir. 1993). But the Bureau of Prisons' authority rests on statutes, and any delegation is from the President and the Attorney General rather than a judge. Cf. *United States v. Gomez*, 24 F.3d 924 (7th Cir. 1994) (Bureau may apply prisoner's income to satisfy his debts); *United States v. House*, 808 F.2d 508 (7th Cir. 1986) (same).

Because a prisoner's earnings while in custody depend on the Bureau of Prisons, as well as the prisoner's co-operation with its programs, it is not clear what payment schedule a court could set if it wanted. Only assets the prisoner had at the time of his sentence would be available as a realistic matter—and any existing assets should be seized promptly. If the restitution debt exceeds a felon's wealth, then the Mandatory Victim Restitution Act of 1996, 18 U.S.C. §§ 3663A, 3664, demands that this wealth be handed over immediately; a schedule of payments covers only how much the convict must pay from earnings (and any lump sums such as inheritances) in the future.

Prison earnings and other transactions concerning prison trust accounts are so completely within the Bureau of Prisons' control that it would be pointless for a judge to tell the convict how much to pay a month. We therefore agree with *United States v. Dawkins*, 202 F.3d 711 (4th Cir. 2000), and *United States v. Miller*, 406 F.3d 323 (5th Cir. 2005), that a judgment of conviction need not contain a schedule of restitution payments to be made during incarceration. We recognize that six circuits have reached a contrary conclusion. See *United States*

*v. Kinlock*, 174 F.3d 297 (2d Cir. 1999); *United States v. Corley*, 500 F.3d 210 (3d Cir. 2007); *United States v. Davis*, 306 F.3d 398 (6th Cir. 2002); *United States v. McGlothlin*, 249 F.3d 783 (8th Cir. 2001); *United States v. Gunning*, 401 F.3d 1145 (9th Cir. 2005); *United States v. Overholt*, 307 F.3d 1231 (10th Cir. 2002). But these decisions rest on a view that a silent judgment "delegates" judicial authority to the Bureau of Prisons, and we have explained why this is not so.

On occasion district judges have tried express delegation to the Bureau of Prisons. *United States v. Pandiello*, 184 F.3d 682, 688 (7th Cir. 1999), was such a case, and we held that a court may not transfer judicial authority to the Bureau. (In *Pandiello* the district judge had directed the defendant to make equal monthly payments while in prison, then left it to the Bureau to set the amount of those level payments. See 184 F.3d at 688.) But when the judicial silence allows the Bureau to decide how much, if anything, to remit through the Inmate Financial Responsibility Program, there is no problem. So we held in *McGhee v. Clark*, 166 F.3d 884 (7th Cir. 1999), with respect to collection of a fine through a prison trust account. *McGhee* remarked that "[c]ases in which a district court expressly has delegated to the [Bureau] its discretion to schedule . . . payments have no application" when the judgment leaves all decisions to the Bureau, to be made on the Bureau's own authority. 166 F.3d at 886. Whether *Pandiello* is sound in treating the district court's specification of any details of payment during prison as a form of "delegation" is a subject that we need not consider further today.

Thus we hold that leaving payment during imprisonment to the Inmate Financial Responsibility Program is not

an error at all, let alone a plain error. The statute requires the judge to set a schedule if the defendant cannot pay in full at once, see 18 U.S.C. §3664(f)(2), but it does not say when the schedule must begin. We hold today that it need not, and as a rule should not, begin until after the defendant's release from prison. Payments until release should be handled through the Inmate Financial Responsibility Program rather than the court's auspices.

With respect to Sawyer and Rogers, however, the district judges erred. Neither has the ability to pay immediately, and §3664(f)(2) therefore required the judges to set schedules for repayment from future earnings and other income once they leave prison. Several decisions in this circuit hold that omissions of any schedule at all meets the requirements of "plain error" under Fed. R. Crim. P. 52(b). See, e.g., *United States v. Thigpen*, 456 F.3d 766, 771 (7th Cir. 2006); *United States v. Mohammad*, 53 F.3d 1426, 1438–39 (7th Cir. 1995); see also *Pandiello*, 184 F.3d at 688. Recently we held that a judge's improper failure to set schedules for drug testing of persons on supervised release is not plain error. See *United States v. Tejeda*, 476 F.3d 471, 475–76 (7th Cir. 2007). That opinion, which was reviewed by the full court under Circuit Rule 40(e), observes that plain-error review is not designed to produce "expensive, technical, but essentially meaningless do-overs". 476 F.3d at 475. That's a fair description of what Sawyer and Rogers want. The United States has asked us to overrule *Thigpen* and its predecessors in light of *Tejeda*.

Plain-error review has three requirements and one discretionary component. The requirements are (1) error that (2) is plain and (3) affects substantial rights. See *United States v. Olano*, 507 U.S. 725 (1993). If the defendant

shows these three things, then the court of appeals must decide whether to exercise discretion in his favor. A court should do so if the error "seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id.* at 736. See also *United States v. Cotton*, 535 U.S. 625, 631–33 (2002); *Jones v. United States*, 527 U.S. 373, 389 (1999). Failure to set schedules for Sawyer and Rogers is error and, after *Day*, that error is "plain." But the error does not affect their substantial rights.

In what way would a schedule—which is to say, "pay at least $x every y days"—be more favorable than an open-ended approach that leaves timing to the defendants' discretion? Slow payment does not return a person to prison. Only a deliberate failure to use available resources could have that effect, and then only during the term of supervised release (one condition of which is paying restitution). If a victim or probation officer concludes that a person obliged to make restitution is paying less than he is able, all that happens is that the shortfall will be reported to the judge—and the remedy will be a schedule of minimum payments. See 18 U.S.C. §3664(k) and §3583(e)(2) (schedules may be set or changed at any time in light of the convict's current resources).

Sawyer and Rogers owe the full amount. 18 U.S.C. §3663A, §3664(f)(1). A statement along the lines of "fulfil your legal obligations" does not undermine anyone's rights; instead it honors legal entitlements—including the victims' entitlement to restitution. All that a "due immediately" statement in a judgment does is command the defendant to discharge his obligations as quickly as possible. We often say that restitution in a criminal case is fundamentally a civil remedy, administered through the criminal process only for convenience.

See, e.g., *United States v. George*, 403 F.3d 470, 473 (7th Cir. 2005).

Victims could obtain the same monetary judgment through civil litigation, and civil judgments are payable in full immediately. Judgment creditors may seize assets and garnish wages. A criminal judgment providing no more than is available from a civil suit cannot be thought to jeopardize anyone's "substantial rights." Indeed, under §3664(m)(1)(B) a person to whom restitution is due may register the criminal judgment and collect it through the civil process. Alternatively a victim could initiate a separate civil suit, and the wrongdoer's liability would be incontestable as a result of §3664(*l*); this approach is attractive to a victim who thinks that the court has set restitution too low and who wants damages to be established under standard rules of tort or contract law.

Even if "pay immediately" could be thought to delegate power to the probation office during the period of supervised release—though this is not what the judgment says; "pay in full" does not delegate any power to anyone, and a "power to alert the judge if the defendant doesn't pay" is a *permissible* form of delegation—neither Sawyer nor Rogers has any reason to think that the probation office's ideas about an appropriate rate of payment will be more onerous than the schedule a judge would have adopted. If the probation office is a tough taskmaster, the defendant may obtain a judicial decision under §3583(e)(2). Thus, just as in *Tejeda*, it is impossible to see how a defendant's substantial rights have been compromised.

Quite apart from the question whether a statement that restitution is due immediately affects defendants' sub-

stantial rights, it is difficult to understand how a judicial order that does no more than require a defendant to pay what he owes could undermine the fairness, integrity, or public reputation of judicial proceedings. To the contrary, a schedule that lets the defendant profit from crime diminishes the public reputation of judicial proceedings. Let's not kid ourselves: One reason defendants want judges to set schedules is to avoid paying what they owe. It is hard, perhaps impossible, for a judge to know how much a given defendant will be able to pay years later. Schedules are guesswork. If the judge sets one that turns out to be too high, the defendant won't pay (you can't get blood from a stone); but if the judge errs on the low side, the defendant keeps the money and the victim loses out.

Duncan's schedule, which takes effect as soon as he leaves prison, shows the risk. He has been ordered to pay $177,827 in restitution. He owes that amount plus interest, which by statute is set at 4.77% (a rate based on what the United States pays on federal debt, much lower than what Duncan would pay for unsecured credit on his own account). See 18 U.S.C. §3612(f)(1). After eight years in prison, Duncan will owe $260,297 (less to the extent of his payments under the Inmate Financial Responsibility Program). To amortize the debt over 20 years, the maximum allowed by §§ 3664(m), 3613(b), (c), Duncan would have to pay $19,549 a year, or $1,629 a month. That is substantially more than the $100 monthly minimum set by his schedule, and likely more than 10% of his gross income after release. The district court's actual schedule directs him to pay 10% of net income—"net of what?", one may ask, but net must be less than gross. So his scheduled payments are unlikely to satisfy his debt.

What's more, the district court relieved Duncan of the need to pay interest, as 18 U.S.C. §3612(f)(3)(A) allows. This means that Duncan could amortize the debt after release by paying $741 a month. Even this—which effectively forces the victims to bear more than half of the loss—considerably exceeds the $100 monthly minimum payment. No wonder defendants like schedules; they are a great way to escape paying what's owed. (The United States has not filed a cross-appeal to maintain that Duncan's schedule is too low.)

Sawyer defrauded his victims out of almost $1.4 million. He owes that amount plus interest; the judge in Sawyer's case did not use the option conferred by §3612(f)(3)(A) to relieve the wrongdoer of interest. If, as is likely, Sawyer pays little or nothing during his incarceration, he will owe $1,685,342 on the day he is released. To amortize that debt over 20 years, Sawyer would have to pay $124,940 annually or $10,412 a month. His ability to pay such a sum is doubtful; he must be hoping that the judge would set a substantially lower schedule, as the court did for Duncan. But any lower payment would be equivalent to excusing *non*-payment, which would be incompatible with the fundamental command of the Mandatory Victim Restitution Act—that the wrongdoer make good the harm done.

Rogers owes only $1,837 in restitution. By the time of his release interest will have increased the debt to $2,275 (less if he makes payments under the Inmate Financial Responsibility Program). As with Duncan, the district judge excused Rogers from paying interest, so he could retire the whole debt by paying $1,837 after release. That's within the reach of even a person whose earning capacity had been diminished by a conviction that

makes some jobs unobtainable. A schedule spreading repayment over an extended period would injure the victims for no good reason (the longer the schedule, the more the value of the repayment is eroded by the non-accrual of interest). An obligation that Rogers pay "immediately" (which is to say, as soon as possible) after release is not a miscarriage of justice.

*Thigpen*, *Pandiello*, and *Mohammad* find plain error but do not discuss the issues we have canvassed in this opinion. Similarly, other circuits have held that lack of a schedule is plain error without discussing how an order that does no more than require payment of one's just debts undermines substantial rights or calls the legal system into disrepute. See *United States v. Kinlock*, 174 F.3d 297 (2d Cir. 1999); *United States v. Coates*, 178 F.3d 681 (3d Cir. 1999); *United States v. Lee*, 213 F.3d 633 (4th Cir. 2000); *United States v. Davis*, 306 F.3d 398 (6th Cir. 2002); *United States v. Overholt*, 307 F.3d 1231 (10th Cir. 2002); *United States v. Heath*, 419 F.3d 1312 (11th Cir. 2005). Contra, *United States v. Miller*, 406 F.3d 323 (5th Cir. 2005) (lack of a schedule not necessarily plain error). Now that *Tejeda* has reopened the subject in this circuit, we think it preferable to have a unified approach than to maintain inconsistent lines of precedent—one for drug testing and another for restitution. For the reasons we have canvassed, *Tejeda*'s approach is the preferable one. See also *United States v. Padilla*, 415 F.3d 211 (1st Cir. 2005) (en banc) (taking same approach as *Tejeda* to drug-testing issues).

A judgment requiring defendants to pay restitution immediately after release, while erroneous (if the defendant lacks the wealth to pay at once), does not jeopardize substantial rights, and the uncorrected error does

not imperil the fairness, integrity, or public reputation of judicial proceedings. We therefore overrule *Thigpen*, *Pandiello*, *Mohammad*, and any other decision in this circuit treating an immediate-payment requirement as plain error that the court of appeals must correct. This opinion was circulated before release to all active judges under Circuit Rule 40(e). No judge requested a hearing en banc.

AFFIRMED