# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-3955

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

JEFFREY L. GOLDBERG,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 03 CR 332—**Milton I. Shadur**, *Judge.*

_____

ARGUED APRIL 4, 2005—DECIDED MAY 5, 2005

_____

Before POSNER, ROVNER, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* The defendant pleaded guilty to mail fraud and was sentenced to 52 months in prison, the middle of the applicable guideline range after the judge imposed a two-level "vulnerable victim" enhancement. U.S.S.G. § 3A1.1(b). The appeal challenges the enhancement and also seeks, in the alternative, a *Booker*-motivated limited remand under *United States v. Paladino*, 401 F.3d 471, 483-84 (7th Cir. 2005). It is an alternative because the defendant would prefer that we order him resentenced rather than merely ask the judge whether he would give the defendant

the same sentence under the post-*Booker* regime, in which the sentencing guidelines are advisory, rather than, as before, mandatory. We shall see later that it is a risky preference.

A certified financial planner, acccountant, and lawyer, Goldberg defrauded some 130 people of a total of some $8 million. The judge received more than 20 letters from victims of Goldberg's scheme, and at the sentencing hearing read into the record four of them, including one from Goldberg's own aunt, a woman in her eighties. Goldberg had fleeced her and her husband of more than $100,000—in her words, a "majority of my husband's and my entire lifetime assets, other than Social Security." A letter from an-other woman, not elderly, stated: "I was truly at a vul-nerable point in my life when I met Jeff Goldberg . . . . At the time of the divorce I felt I needed someone that I could trust to help me negotiate and understand the financial aspect of the divorce settlement as I had no knowledge at all of financial matters." The judge thought the four letters showed that some of Goldberg's victims had indeed been vulnerable victims.

Goldberg complains that there is no evidence that he *targeted* vulnerable persons. The government responds that if a victim is vulnerable, it is irrelevant that he or she was not a target. Concerning this issue there is tension in our cases, compare *United States v. Parolin*, 239 F.3d 922, 927 n. 2 (7th Cir. 2001); *United States v. Paneras*, 222 F.3d 406, 413 (7th Cir. 2000), and *United States v. Snyder*, 189 F.3d 640, 649 (7th Cir. 1999), with *United States v. Sims*, 329 F.3d 937, 944 (7th Cir. 2003); *United States v. Rumsavich*, 313 F.3d 407, 411 (7th Cir. 2002); *United States v. Grimes*, 173 F.3d 634, 637-38 (7th Cir. 1999), and *United States v. Almaguer*, 146 F.3d 474, 478 (7th Cir. 1998), as well as in cases from other circuits. See, e.g., *United States v. Frank*, 247 F.3d 1257, 1259-60 (11th

Cir. 2001); *United States v. Brawner*, 173 F.3d 966, 973 (6th Cir. 1999); *United States v. Burgos*, 137 F.3d 841, 843-44 (5th Cir. 1998). The cases that dispense with the requirement note that an explicit "targeting" requirement in an application note to the applicable guideline (U.S.S.G. §3A1.1(b)(1)) was removed by the Sentencing Commission in 1995.

The tension can be dissolved by noting the difference between a nonindividualized fraudulent solicitation communicated indiscriminately by mail or television or other media to a large audience of potential victims, and a personalized solicitation in which the defendant deals face to face with his victims. In the first type of case, the presence of vulnerable victims is accidental and unavoidable and the defendant makes no effort to exploit anyone's vulnerability. "[The current] application note says that the enhancement 'would not apply in a case in which the defendant sold fraudulent securities by mail to the general public and one of the victims happened to be senile.' U.S.S.G. § 3A1.1, cmt. n. 2. The missing element in that case is that the defendant had no reason to know such a victim existed." *United States v. Zats*, 298 F.3d 182, 189 (3d Cir. 2002). In the second type of case the defendant could easily avoid dealing with vulnerable victims and, having decided not to forbear, should not be allowed to escape responsibility for having taken advantage of people unable to protect themselves. Knowledge that some of the people he was dealing with were especially vulnerable to financial fraud did not cause Goldberg to lay off them. See *United States v. Monostra*, 125 F.3d 183, 190 (3d Cir. 1997). He knew he was exploiting the vulnerable, along with others who were not vulnerable. He intended the inevitable consequences of his acts.

Very oddly, the government, in response to questions from the bench, told us that Goldberg had not been given adequate notice that such an enhancement was in the offing.

If true, he would be entitled to a new sentencing hearing. E.g., *United States v. Pandiello*, 184 F.3d 682, 686 (7th Cir. 1999); *United States v. Carey*, 382 F.3d 387, 392 (3d Cir. 2004); *United States v. Thorn*, 317 F.3d 107, 131 n. 17 (2d Cir. 2003). It is not true. Although neither the prosecutor nor the presentence investigation report had recommended such an enhancement, the judge warned the parties before the sentencing hearing that he might consider it because of the letters he had received from victims of the fraud. At argument Goldberg's lawyer told us he hadn't seen many of the letters until the sentencing hearing, but he did not contend and could not truthfully have contended that he had had no opportunity to inspect and if possible refute the damaging letters well in advance. No more process than this was required. See *United States v. Pandiello, supra*, 184 F.3d at 686-87.

For on August 18, 2003, months before sentencing, the district judge had told the parties that he had received "some letters from victims and three supplemental reports (dated July 11, July 30, and August 8, 2003) from the probation officer that summarize other victim impact statements." The judge "advise[d] the defendant and counsel for both parties that at the time of sentencing this court will consider one or both of the following bases for possibly imposing a custodial sentence in excess of the range of 37 to 46 months that applies to the total offense level of 21 and a criminal history category of 1 (the estimate reflected in the PSI): (1) a possible two-level increase in the total offense level, occasioned by the possible application of the vulnerable victim adjustment under [U.S.S.G.] § 3A1.1; (2) a possible upward departure under Guideline § 5K2.0 (or perhaps Guideline § 5K2.3 as well) by reason of what may be found to be the exceptionally severe impact of defendant's conduct on numerous victims." The judge added that "all of

those materials have also been provided to defense counsel and the United States Attorney's Office" and that the parties could file written responses.

On October 22, Goldberg filed a motion for a downward departure in which he argued against a vulnerable-victim enhancement. Further supplements identifying victims of Goldberg's fraud were submitted by the probation office before the sentencing hearing on October 30—at which Goldberg acknowledged having received them.

Although there was no infirmity in the judge's procedure, Goldberg is entitled to a limited *Paladino* remand because the judge based the enhancement on his own findings. It is worth pointing out, however, that Goldberg may be better off with that relief than with his preferred relief, which is an order resentencing him. Any resentencing would be conducted under the new, post-*Booker* regime, in which the guidelines are merely advisory, and so he'd be exposed to the risk of a higher sentence. Suppose we agreed with him that the judge hadn't given adequate notice of intent to impose a vulnerable-victim enhancement. Suppose further that if the case were remanded for resentencing, the judge, after giving Goldberg due notice, again imposed the vulnerable-victim enhancement. The judge might then decide that 52 months was too light a punishment for Goldberg's crime. Although the sentence was at the midpoint of the guideline range, the range is now merely advisory. Judge Shadur made clear that he was disturbed by the magnitude of Goldberg's fraud and moved by the letters from which we quoted. He might want to give Goldberg a longer sentence, and if the departure were a reasonable one we would have to affirm.

We were surprised to learn that Goldberg's lawyer and— we understand from him, and from the argument of another criminal defense lawyer in an appeal argued before us the

same day—other members of the defense bar as well believe that a sentence meted out in the pre-*Booker* era of mandatory guidelines is the ceiling in the event of a resentencing unless there are changed factual circumstances, such as additional criminal conduct by the defendant. If there are no such changed circumstances, Goldberg's lawyer told us, the inference would arise that any heavier sentence imposed on remand was vindictively motivated and therefore improper. That is a misunderstanding, and it is a misunderstanding dangerous to criminal defendants. When there is no relevant legal or factual change between sentence and resentence, the motive for an increase in punishment is indeed suspect. *Alabama v. Smith*, 490 U.S. 794, 798-99 (1989); *United States v. Peyton*, 353 F.3d 1080, 1085-86 (9th Cir. 2003); *United States v. Rodgers*, 278 F.3d 599, 603 (6th Cir. 2002). But *Booker* brought about a fundamental change in the sentencing regime. The guidelines, mandatory when Goldberg was sentenced, are now advisory. Were he to be resentenced, it would be under a different standard, one that would entitle the judge to raise or lower the sentence, provided the new sentence was justifiable under the standard of reasonableness. *United States v. Tedder*, No. 03-3345, 2005 WL 767061, at *8 (7th Cir. Apr. 6, 2005); *United States v. Forrest*, 402 F.3d 678, 684 (6th Cir. 2005). No inference of vindictiveness would arise from the exercise of the judge's new authority.

The risk that the judge might increase the sentence is not significant in a *Paladino* remand. Such a remand asks the judge whether he would have given the defendant a shorter sentence had he realized the guidelines are merely advisory. If so, this would show that his treating the guidelines as mandatory had been a plain error, and so we would vacate for resentencing. Since our basis for doing this would be the judge's having told us that he wanted to shorten the defendant's sentence, it would be an unusual case, to say the

least, in which the judge would impose a heavier rather than a lighter sentence; presumably it would be a case in which damaging new information had come to light since the *Paladino* remand.

*Tedder* in contrast was a case in which we ordered the defendant resentenced because the judge had misapplied the guidelines, in which event he can impose a higher sentence because the guidelines are merely advisory. And this demonstrates that a defendant who appeals a pre-*Booker* sentence on the basis that the guidelines were misapplied (as in Goldberg's challenge to the vulnerable-victim enhancement) is playing with fire, because if he wins and is resentenced the judge will have more sentencing latitude, up as well as down, than he did when the guidelines were deemed mandatory.

But the challenge failed in this case, and Goldberg is therefore entitled only to a *Paladino* remand, which we hereby order.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*