

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-5-2007

# USA v. Jackson

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4623

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Jackson" (2007). *2007 Decisions*. Paper 266.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/266

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-4623
_____

UNITED STATES OF AMERICA

v.

BRAHEEM JACKSON,

Appellant.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 02-cr-00172-36)
District Judge: Hon. Stewart Dalzell

Submitted Under Third Circuit LAR 34.1(a)
October 23, 2007

Before: SLOVITER, CHAGARES, and HARDIMAN, Circuit Judges.
_____

(Filed:   November 5, 2007)


OPINION OF THE COURT


CHAGARES, Circuit Judge.

Braheem Jackson appeals his sentence, contending that the District Court failed to

discharge its statutory obligation to consider the factors articulated in 18 U.S.C. § 3553(a)

in imposing his sentence.  Jackson also argues that the District Court penalized him for

exercising his right to a post-Booker re-sentencing and that the sentence imposed created improper disparities between himself and similarly-situated defendants. Because there is ample record evidence that the District Court considered the § 3553(a) factors and imposed a sentence that reflects a reasonable application of those factors, and because that sentence neither penalized Jackson for his re-sentencing nor created improper disparities between similarly-situated defendants, we will affirm the District Court's decision in all respects.

I.

As we write only for the parties, our summary of the facts is brief. In 1997 Courtney Carter founded what became a sprawling, massive drug dealing organization (the Carter Organization). By February 2002, the Carter Organization was operating across Pennsylvania and Delaware. In total, the Carter Organization sold over a metric ton of cocaine and crack, and engaged in numerous shootings, one of which resulted in murder. Braheem Jackson was released from state prison in Pennsylvania in September 2001, and immediately set to work as a crack dealer for the Carter Organization. He operated at the corner of Brooklyn and Wallace Streets in West Philadelphia.

On December 8, 2001, Jackson was sleeping in bed at 636 Brooklyn Street when the police raided the property. After the police found 145 grams of crack, 20.7 grams of cocaine, $4,700.00 in cash, various drug paraphernalia, and five loaded handguns on the premises – one in the bed in which Jackson slept – they arrested Jackson, along with two other Carter Organization members. Jackson was arrested again on December 18, 2001

2

(in possession of 3.27 grams of crack), and a third time on February 19, 2002 (in possession of 3.38 grams of crack).

On October 24, 2002, a federal grand jury indicted Jackson and thirty-six others on a total of 135 counts related to the Carter Organization's activities. The indictment included a wide variety of drug, gun, money laundering, and conspiracy charges. Jackson faced four charges, for conspiracy to distribute cocaine and crack, possession with intent to distribute crack, possession with intent to distribute crack within 1,000 feet of a school, and use of a firearm in furtherance of a drug offense. Jackson went to trial in February and March of 2004, and was convicted of all charges but the conspiracy count, which the government subsequently dismissed without prejudice.

Following Jackson's conviction, a probation officer prepared a Presentence Report (PSR). This report discussed, inter alia, the circumstances surrounding the crimes of which Jackson was convicted, as well as Jackson's criminal history and other personal information. The PSR also concluded that Jackson had an offense level of 40 and a criminal history category of IV, which corresponded to an imprisonment range of 360 months to life for the drug convictions under the then-mandatory Sentencing Guidelines. Moreover, the conviction for the gun charge subjected Jackson to 60 months of mandatory consecutive imprisonment, resulting in a total minimum Guidelines imprisonment range of 420 months.

Jackson was first sentenced on May 7, 2004. The District Court sustained Jackson's objection to the PSR's drug weight calculation, which had the effect of

lowering his base offense level to 36 and his total offense level to 38. After recalculating

Jackson's Guideline range to 324-405 months for the drug convictions, the District Court

sentenced Jackson to the bottom of this range for the drug convictions and added the

mandatory 60-month consecutive sentence for the gun conviction, thereby reaching a total

sentence of 384 months incarceration.

On May 20, 2004, Jackson appealed his sentence. On August 17, 2006, this Court

affirmed the conviction, but remanded the case for re-sentencing in accordance with the

mandates of the Supreme Court's decision in United States v. Booker, 543 U.S. 220

(2005). See United States v. Jackson, 192 F. App'x 96, 97 (3d Cir. Aug. 17, 2006)

(unpublished opinion).

On October 17, 2006, Jackson was re-sentenced, and received the same sentence –

384 months imprisonment – as at his 2004 sentencing. This appeal followed.

II.

We review a sentence imposed by a District Court for reasonableness. United

States v. Cooper, 437 F.3d 324, 326 (3d Cir. 2006). This inquiry has two steps, because in

the sentencing context, reasonableness has both procedural and substantive components.

See, e.g., United States v. Ferguson, 456 F.3d 660, 664 (6th Cir. 2006). First, we must

review the record to determine if the District Court exercised its discretion by considering

the relevant factors enumerated in § 3553(a). Id. at 329. A sentence is procedurally

unreasonable if the District Court fails to consider the applicable Guideline range or

neglects to consider the other factors listed in § 3553(a). Cooper, 437 F.3d at 329.

4

Imposition of a within-Guidelines sentence – without more – demonstrates only that the District Court "considered one of the § 3553(a) factors – namely, the guideline range itself, [but] does not show that the court considered the other standards reflected in that section. . . ." Id. at 330 (internal citations omitted); see also 18 U.S.C. § 3553(a)(4) (listing Sentencing Guidelines as one of seven factors the District Court must consider in imposing sentence).

While "there are no magic words that a district judge must invoke when sentencing, . . . the record should demonstrate that the court considered the § 3553(a) factors [in fashioning the defendant's sentence]." Cooper, 437 F.3d at 332. Thus, we must determine whether the District Court gave "meaningful consideration" to the § 3553(a) factors. Id. If the record does not reflect adequate consideration of the § 3553(a) factors, remand is required, and our inquiry ends there. Id.

If, however, the record makes clear that the District Court gave meaningful consideration to the § 3553(a) factors, our analysis must proceed to the substantive aspect of reasonableness: an evaluation of whether the sentence reflects a rational application of those factors. Cooper, 437 F.3d at 329.

III.

A.

Although there is no bright-line test to determine what depth of analysis qualifies as "meaningful consideration," we have recently articulated certain principles that guide our review in this respect. On the one hand, the District Court "need not discuss every

5

argument made by a litigant if an argument is clearly without merit. Nor must a court discuss and make findings as to each of the § 3553(a) factors if the record makes clear the court took the factors into account in sentencing." Cooper, 437 F.3d at 329 (internal citations omitted). On the other hand, a "rote statement" that the Court has considered the § 3553(a) factors is insufficient. Id. This is so because "there is no way to review a court's exercise of discretion if it does not articulate the reasons underlying its decision." Id. (quoting United States v. Johnson, 388 F.3d 96, 101 (3d Cir. 2004) (internal quotations omitted)). The District Court need not recapitulate its consideration of the § 3553(a) factors during the plea colloquy, however, if the basis for the sentence imposed is "otherwise apparent from the record." Cooper, 437 F.3d at 329 (quoting Becker v. ARCO Chem. Co., 207 F.3d 176, 180-81 (3d Cir. 2000)). In view of these principles, the question is whether "the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." United States v. Schweitzer, 454 F.3d 197, 204 (3d Cir. 2006).

In this case, there is ample evidence that the District Court considered the § 3553(a) factors in imposing sentence. First, the District Court certainly considered § 3553(a)(4), because it recited the Guidelines Range and then sentenced Jackson to a sentence within that range. Next, the District Court adopted the findings and conclusions stated in the Presentence Report. In addition to a lengthy description of the Carter Organization's massive and brazen criminality, the PSR contained a detailed description of Jackson's specific participation in the Carter Organization. Moreover, the PSR set

6

forth substantial amounts of information about Jackson's history and characteristics, including his personal and family history, employment history, mental and emotional health, educational background, and criminal history.

The District Court considered, at remarkable length, these factors and others at the re-sentencing hearing. The transcript of the re-sentencing hearing, stretching over fifty pages, reflects a careful and thorough consideration of § 3553(a) in all its aspects. The District Court did not merely "discuss" each of the § 3553(a) factors, it ruminated over them, struggling with the implications of the § 3553(a) factors on Jackson's sentence. See, e.g., Appendix (App.) J. 43 (calling the sentencing decision "the most difficult calculus a judge ever has to make. No question about it."); see also, e.g., App. J. 30 (noting that Jackson's sentencing raised "the issue of individual justice versus protecting society, that's why I say this is so darn profound."). Nonetheless, Jackson raises several challenges to the District Court's consideration of § 3553(a), which we will consider in turn.

1.

Jackson first argues that the District Court erred by not considering § 3553(a)(6), which mandates that "[t]he court, in determining the particular sentence to be imposed, shall consider . . . (6) the need to avoid unwarranted sentence disparities" among similarly-situated defendants. 18 U.S.C. § 3553(a)(6). Because a co-defendant, Rollerson, whose offense conduct was very similar to Jackson's, received a 300 month sentence, Jackson argues that his own 384 month sentence was unreasonable.

7

Jackson is incorrect. First, as the District Court acknowledged in depth at the resentencing hearing, Rollerson was sentenced during the "interregnum" in federal sentencing between Blakely v. Washington, 542 U.S. 296 (2004) and Booker. Faced with an uncertain sentencing landscape (the District Court called it a "fog bank"), the District Court followed the premise that only facts found by a jury or admitted by the defendant could be used in determining the Guidelines range. This analysis was ultimately rejected by Booker, which retained judicial fact-finding at sentencing but rendered the Guidelines advisory. Nonetheless, Rollerson benefitted from the District Court's interpretation of Blakely, and he wisely chose not to be resentenced under Booker. Jackson, however, was resentenced not under Blakely (and the District Court's ultimately erroneous assumption regarding Blakely's implications), but under Booker.

Because Rollerson's and Jackson's sentences were imposed under different sentencing regimes, the disparity between the two sentences is not an "unwarranted disparity" prohibited by § 3553(a)(6). Rather, it is very much a *warranted* disparity. That Rollerson benefitted from a fluke in the timing of his sentence does not mean that, under a new and different precedent, Jackson can benefit from the same fluke. As the District Court stated, simply because "Mr. Rollerson was enormously fortunate . . . that does not mean that the Court is [] going to be or needs to be sucked into a sort of downward spiral of comparing every sentence to the very favorable treatment that a certain defendant or defendants received in the interregnum between Blakely and Booker." App. J. 15.

8

Second, the only way this Court could eliminate the warranted disparity between Jackson's sentence and Rollerson's would be to *create* unwarranted disparities between Jackson's sentence and two other defendants in the Carter Organization cases, Renard Brown and Nathaniel Montgomery. Brown's offense level was 40 and his criminal history category was I, and he did not have a gun conviction pursuant to 18 U.S.C. § 924(c) (which, as noted above, carries a mandatory consecutive 60 month sentence). He received a sentence of 300 months. Montgomery had an offense level of 38, a criminal history category of I, and no § 924(c) conviction. He received a sentence of 282 months. Jackson, with an offense level of 38, a criminal history category of IV, and an automatic 60 additional months for his § 924(c) conviction, received 384 months. Thus, without the § 924(c) conviction, Jackson's sentence presumably would have been 324 months. Given his significantly higher criminal history category, Jackson's sentence is manifestly in line with the sentences of both Brown and Montgomery. But Jackson would have his sentence be reduced to 300 months total – translating to a drug-dealing sentence of 240 months. That sentence would create an unwarranted disparity between his sentence and those of Brown and Montgomery – unwarranted, of course, because all three men have been sentenced under the same post-Booker sentencing regime. Such a result would not be reasonable, and we decline to endorse it.

2.

Jackson next argues that the District Court did not consider Jackson's non-frivolous argument regarding the crack/powder cocaine differential. In United States v.

9

Gunter, 462 F.3d 237, 249 (3d Cir. 2006), this Court reminded district courts that they have the discretion to consider the crack/powder cocaine differential as a factor when imposing a sentence after considering § 3553(a). Jackson claims that he raised Gunter at his re-sentencing, but that the District Court "failed to respond in any meaningful way" to Jackson's argument. Jackson therefore claims that his sentence cannot be upheld as reasonable.

We note first that this argument is ironic based upon the statements of Jackson's counsel at the re-sentencing hearing. See App. J. 24 ("it has been my experience in this Court that your Honor always takes the arguments made by counsel seriously"); App. J. 35 ("having appeared before you a number of times, I know that you give these issues a lot of thought. . . . And, that your Honor is very serious about your role in sentencing defendants. I know that.").

Second, however, Jackson's argument is belied by the record. Jackson's counsel only briefly touched on the Gunter argument himself at the re-sentencing hearing:

> Mr. Mancano: The final point, I really don't want to belabor that. Mr. Lloret spends a lot of time in his sentencing memo arguing that, but I don't think we disagree as to what Gunter says. We are not asking the Court to substitute its own ratio.
> The Court: No, no, no. I read Pho.
> Mr. Mancano: All we are saying, among the factors, consider that differential in fashioning a sentence.
> The Court: All right.
> Mr. Mancano: That's all we are saying there, your Honor.
> The Court: All right.

App. J. 38.

10

The Court indicated that it had read United States v. Pho, 433 F.3d 53, 62 (1st Cir. 2006), which relates to the same subject matter as Gunter. This makes plain that the Court was well aware of Gunter's import. In addition, the District Court indicated that it paid close attention to Jackson's brief, which set forth the Gunter argument in detail. The Court acknowledged Jackson's argument, and indicated that it understood the argument. Simply because the Court did not accept Jackson's position does not make the District Court's decision unreasonable.

3.

Jackson's third argument is based upon the so-called "parsimony provision," which states that "[t]he court shall impose a sentence sufficient, but not greater than necessary," to comply with the goals of sentencing set forth in § 3553(a)(2). At Jackson's original sentencing, the District Court commented that a 384 month sentence "surely suffices to satisfy all the goals" of § 3553(a)(2). It then reimposed the same sentence at Jackson's re-sentencing. According to Jackson, this means that the District Court "explicitly ignored" the "parsimony provision" and therefore applied "the wrong legal standard . . . in imposing [Jackson's] sentence," Jackson Br. at 14, resulting in "a sentence which is much greater than necessary to accomplish the goals of Section 3553(a)." Jackson Br. at 11.

Jackson is mistaken. Not only did the District Court specifically refer to the "parsimony provision" during a colloquy with Jackson's counsel, but it engaged in a

11

lengthy discussion with Jackson's counsel regarding just that topic. The Court pressed counsel on how he could assure the Court that a 300 month (as opposed to a 384 month) sentence would be sufficient to, among other considerations, "protect the public from further crimes of the defendant." App. J. 30. This is the precise language of § 3553(a)(2)(C). The Court also discussed the need for the sentence to "afford adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a)(2)(B), by noting that "there is a statistical difference, the older you get, the less likely you are to commit crimes." App. J. 32-33. It is thus clear that the District Court not only took the parsimony provision into account in determining Jackson's sentence, but delved thoroughly into the purposes of sentencing to which each particular sentence must comply. Accordingly, because the re-sentencing transcript demonstrates clearly that the Court considered the parsimony provision at length, we reject Jackson's argument on this point.

4.

Finally, Jackson argues that the District Court erred by failing to consider properly § 3553(a)(1), which dictates that in fashioning a sentence, the District Court "shall consider . . . (1) . . . the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). According to Jackson, the Court was unable to find a way to measure precisely Jackson's tragic personal history vis a vis the Guidelines sentencing factors, and therefore "mistakenly believed that . . . the information could not be used at all." Jackson Br. at 23.

12

This assertion is belied by the record. The Court considered, and sympathized with, Jackson's heartbreaking personal history – at one point acknowledging that Mr. Jackson had endured "a Dickensian background . . . . I mean one thinks about Oliver Twist." App. J. 28, 40-41. Indeed, the Court recognized that the question of how a defendant's background plays into sentencing "is a very profound issue that you have raised." App. J. 26. But it also rejected a deterministic formula that a difficult background necessarily leads to a life of crime. The Court noted that many people who "come out of horrific circumstances [] don't end up [committing crimes]. Isn't it unfair to them to say, well, it was just inevitable" for Jackson to end up a felon, because "it does violence to the law abiding people" who come from the hard corners of the world. App. J. 26.

Moreover, § 3553(a)(1) mandates consideration not only of the "history" of the defendant, but also of the "characteristics of the defendant." 18 U.S.C. § 3553(a)(1). In considering this factor at length, the Court engaged in a discussion with Jackson's counsel regarding how, in part due to Jackson's terribly fractured home life, the only job he had ever held – ever – was selling drugs. Therefore, the District Court concluded, reluctantly, that "the only thing that society can do is to incapacitate [Jackson] precisely because he has no other means of making a living. You see it is the issue of individual justice versus protecting society, that's why I say this is so darn profound." App. J. 30. In conclusion, the district court considered, at length, both aspects of § 3553(a)(1) – Jackson's history and Jackson's characteristics. The District Court's "failure to give mitigating factors the

13

weight a defendant contends they deserve" does not render the sentence unreasonable.

United States v. Bungar, 478 F.3d 540, 546 (3d Cir. 2007).

B.

The sole remaining issue is the substantive aspect of reasonableness, i.e., whether the sentence imposed by the District Court reflects a reasonable application of the § 3553(a) factors. See Cooper, 437 F.3d at 329. In an effort to show that the District Court erred in this regard, Jackson argues first that the District Court "likely penalized" him for exercising his right to be re-sentenced post-Booker. Jackson complains that at his original sentencing the District Court "implied" that it would give Mr. Jackson a lower sentence if possible, but then failed to do so on re-sentencing. Jackson Br. at 14. He also asserts (calling it "troubling") that the District Court "evidenced a pattern of increasing sentences" for other Carter Organization-related defendants who chose post-Booker re-sentencings. Id. We do not agree.

First, Jackson somehow ignores the fundamental fact that the District Court did not lengthen Jackson's sentence at re-sentencing. Without any additional punishment, Jackson plainly cannot demonstrate "vindictiveness" on the part of the District Court. But Jackson tries to put a twist on the concept of vindictiveness. He claims that because the District Court, at Jackson's original sentencing, "made numerous comments suggesting that he would impose a lower sentence if not bound by the Sentencing Guidelines," that it was somehow "vindictive" of the District Court to not actually lower his sentence at re-sentencing. Jackson seeks to penalize the District Court for expressing

14

sympathy for Jackson's situation. The District Court followed the law at the original sentencing, as it was bound to, by imposing a within-Guidelines sentence. Indeed, it is worth noticing that the District Court sentenced Jackson at the bottom of his then-mandatory Guidelines range. But the Court empathized with Jackson's situation: "It's a very sad story and one that can only make one shake one's head in compassion as one human being to another." App. F. 28.

The District Court followed the law, as it was bound to, at Jackson's re-sentencing. In fact, the District Court even issued an Order on September 11, 2006, mandating that counsel confer with Jackson specifically to discuss the possible ramifications of a post-Booker re-sentencing, which Judge Posner had identified in United States v. Goldberg, 406 F.3d 891, 894-95 (7th Cir. 2005). In Goldberg (which the District Court appended to the September 11, 2006 Order), Judge Posner explained that in a post-Booker environment, a presumption on the part of defendants that "any heavier sentence imposed on remand was vindictively motivated and therefore improper . . . . is a misunderstanding dangerous to criminal defendants." Id. at 894. The misunderstanding would be dangerous because "Booker brought about a fundamental change in the sentencing regime," so that re-sentencings occur "under a different standard, one that would entitle the judge to raise or lower the sentence, provided" the new sentence was reasonable. Id. Note, of course, that Goldberg rejected a presumption of vindictiveness even when examining a sentence that had been increased at re-sentencing. Here, Jackson's sentence

15

remained exactly the same at re-sentencing. With no other evidence of vindictiveness, Jackson's argument fails.

At re-sentencing, the District Court made sure, on the record, that Jackson had met with his counsel to discuss the potential post-<u>Booker</u> ramifications. "Moreover, "[i]n an abundance of caution for Mr. Jackson," the Court also colloquied personally with Jackson, warning that "because of the change in law that <u>Booker</u> made on re-sentencing, a judge may go up as well as down," and that in "a number of re-sentencings in the Courtney Carter matter since <u>Booker</u> was decided," "[w]e have gone in some cases below the original sentence. In others, we have given exactly the same sentence and . . . we have gone above the original sentence . . . . It can go up. It has gone up. This is not a hypothetical conversation we're having." App. J. 5-6. The District Court asked Jackson if he would like some time to consider the implications of what the Court had told him, but Jackson replied, "No, your Honor. I'm fully aware [of] what's going on at this time. I want to proceed." App. J. 6.

All this evinces a conscientious District Court that took seriously its sentencing responsibility and ensured that Jackson knew of the potential consequences of his re-sentencing. For Jackson to now argue that the District Court's efforts were somehow motivated by vindictiveness is, at best, simply backwards and we reject the argument.

IV.

For the foregoing reasons, we affirm the decision of the District Court in all respects.

16